# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF WORCESTER, OCTOBER TERM 1868, AT WORCESTER.

---

PRESENT:

Hon. REUBEN A. CHAPMAN, CHIEF JUSTICE.
Hon. EBENEZER R. HOAR,
Hon. HORACE GRAY, JR.,
Hon. DWIGHT FOSTER, } JUSTICES.
Hon. JOHN WELLS,

---

## COMMONWEALTH *vs.* JONATHAN S. BUTTERICK.

In an indictment for embezzling "bonds of the United States of America, for the payment of money, issued by authority of law," and of an "aggregate value" averred specifically, this description of the embezzled property is sufficient.

A person who embezzles several articles of property at one time may be indicted and convicted for the embezzlement of each article separately.

Evidence that a person who took a promissory note for the purpose of causing it to be discounted at a bank for another person, sent it, with fraudulent intent, to the cashier, with other notes, to be discounted on his own account, and with such intent procured the proceeds to be passed to his own credit, is sufficient to sustain an indictment against him for embezzling the note; and it is immaterial that he afterwards paid part of the proceeds on the other's account at the other's request.

Evidence that a person who took from the maker of a promissory note, as security for his liability as indorser, property which might be the subject of larceny, fraudulently pledged it for his own debt, after the payment of the note by the maker, is sufficient to sustain an indictment against him for embezzlement; and in such an indictment the violated trust is sufficiently set forth by an averment that the defendant took the property in trust and

confidence " to be by him held in his custody and possession as security for the liability which he assumed for the said maker by indorsing the promissory note aforesaid, and, when said promissory note should be paid by the maker, then the said property to be by the defendant delivered to the said maker."

On the trial of an indictment for embezzling property deposited with the defendant for another purpose, by pledging it as security for his own debt, the owner was asked, as a witness, for the purpose of showing that the relations between him and the defendant were such that the latter had a right to presume that the witness would ratify such a use of his property, whether he would have consented to such a use of it, if he had been asked at the time, and whether, at the time he deposited it with the defendant, he had any objection to such a use of it by him. *Held*, that these questions were rightly excluded as immaterial.

The disposal of collateral security by the holder, before the debt of which it was deposited with him to secure the payment becomes due and payable to him, for which a punishment is provided in the Gen. Sts. *c.* 161, § 64, is not indictable as embezzlement under § 35.

An indictment of B. for embezzling securities for money held by him from H. " in trust and confidence to be by B. safely kept for H. until H. should call for the same," sets forth a trust on the part of H. sufficiently to warrant the conviction of B. on proof of his fraudulent conversion of securities so held by him.

In an indictment for embezzling securities for money, there is no need of a special averment that the embezzled property remained at the time of the embezzlement property of the person who originally delivered it to the defendant, if it is sufficiently averred that it was the property of such person at the time of such delivery.

INDICTMENT for embezzlement. The first count charged the delivery to the defendant, on March 1, 1864, at Sterling, by Elizabeth Harbach, of " one bond of the United States of America, for the payment of money, issued by authority of law, of the denomination of five hundred dollars, and of the value of five hundred dollars; sundry other bonds of the United States of America, for the payment of money, issued by authority of law, and of the aggregate value of one thousand dollars; of the money, goods and property of the said Elizabeth Harbach; in trust and confidence to be by the said Jonathan S. Butterick safely kept for her, the said Elizabeth Harbach, until she should call for the same; and that, when the said bonds should be called for by her, the said Elizabeth Harbach, to be by the said Jonathan S. Butterick delivered to her, the said bonds of the United States of America being then and there the subject of larceny ; " that the defendant took into his possession " the aforesaid bonds " on that trust; and that afterwards, to wit, on April 1, 1866, " and before the said bonds of the United States of America, so delivered to him as aforesaid, was [*sic*] by the

said Jonathan S. Butterick delivered to the said Elizabeth Harbach, and before the same were called for by the said Elizabeth Harbach, and before the trust and confidence aforesaid was terminated," the defendant embezzled and fraudulently converted to his own use "the said bonds."

The second count was for the embezzlement by the defendant of "one bond of the United States of America, for the payment of money, issued by authority of law, of the denomination of one thousand dollars, and of the value of one thousand dollars," of the property of said Elizabeth Harbach, delivered by her to him at Sterling on January 1, 1864, "said bond of the United States of America being then and there the subject of larceny," and by him received on a trust set forth in the same language as was used in the first count with reference to the property which was the subject of that count, like language being also used as to the conversion.

The third count charged the delivery by Perley Bartlett to the defendant, at Sterling, on February 10, 1866, of a promissory note for five hundred dollars, bearing that date, and made by Lucius K. Jewett payable three months after date to the order of Bartlett, and by him indorsed, of the property of said Bartlett, "in trust and confidence, to be by the said Jonathan S. Butterick carried to the Lancaster National Bank, and to be delivered by the said Jonathan S. Butterick to the said Lancaster National Bank, at said Lancaster, for discount for the said Perley Bartlett, the said promissory note being then and there the subject of larceny;" that the defendant took the note into his possession on that trust; and that afterwards, to wit, on February 11, 1866, "before the said promissory note, so delivered to him as aforesaid, was by the said Jonathan S. Butterick carried to the said Lancaster National Bank, and delivered to said bank, at said Lancaster, for discount for the said Perley Bartlett, and before said trust and confidence was terminated," the defendant embezzled and fraudulently converted said note to his own use. In this count the promissory note was set forth according to its tenor.

The fourth count charged the delivery by Phineas A. Beaman

to the defendant, at Sterling, on December 18, 1865, of "three bonds of the United States of America, for the payment of money, issued by authority of law, each of the denomination of one hundred dollars and each of the value of one hundred dollars, of the money and property of the said Phineas A. Beaman, in trust and confidence, to be by the said Jonathan S. Butterick held in his custody and possession, as security for the liability which the said Butterick assumed by indorsing a certain promissory note, dated on said eighteenth day of December, in the year aforesaid, for the sum of eight hundred dollars, payable to the said Butterick, or order, in two months from the date thereof, signed by the said Beaman, and then and there indorsed for the said Beaman by the said Butterick, and that, when the said promissory note should be paid by the said Beaman, then the said bonds of the United States of America to be delivered to the said Beaman by the said Jonathan S. Butterick, the said bonds of the United States of America being then and there the subject of larceny; and that the said Jonathan S. Butterick did then and there take and receive into his possession, in trust and confidence, the aforesaid bonds of the United States of America, so as aforesaid delivered to him by the said Phineas A. Beaman, to be by him, the said Jonathan S. Butterick, held in his custody and possession, as security for the liability which he assumed for the said Beaman by indorsing the promissory note aforesaid, and, when said promissory note should be paid by the said Beaman, then the said bonds of the United States of America to be by the said Jonathan S. Butterick delivered to the said Phineas A. Beaman; and that afterwards, to wit, on the first day of February, in the year of our Lord one thousand eight hundred and sixty-six, at Sterling, in the county of Worcester aforesaid, and before the said bonds of the United States of America so delivered to him as aforesaid were by the said Jonathan S. Butterick delivered to the said Phineas A. Beaman, and while the said bonds were in the custody and possession of the said Butterick as security as aforesaid, and before the trust and confidence aforesaid was terminated, he, the said Jonathan S. Butterick, did then and there embezzle and fraudulently con-

vert the said bonds of the United States of America to his own use."

At the trial in the superior court, before *Devens*, J., the defendant, before the jury were impanelled, moved to quash the indictment, " because no offence is therein set forth with due certainty, or at all; because the first two counts contain no sufficient description of the bonds alleged to have been embezzled, nor any sufficient allegation of the nature of the trust; because the alleged trust is unreasonable, impossible and incapable of execution; and because there is no allegation that the bonds when converted were the property of the said Harbach, or that they were ever called for by said Harbach; because the third count contains no sufficient allegation of the nature of the trust, and no allegation that the note, when converted, was the property of said Bartlett; because the fourth count contains no sufficient description of the property alleged to have been converted by the defendant; because there is no allegation of any act on the part of the defendant amounting to an unlawful conversion, nor that the bonds were converted by the defendant to his own use otherwise than by keeping them in his possession, for his use, as collateral security, nor that said bonds were the property of said Beaman at the time of said conversion, but, on the contrary, it appears that they might have then rightfully become the property of the defendant." This motion the judge overruled.

The trial proceeding, " evidence was offered under the first count, on the part of the Commonwealth, of the delivery of three bonds of the denomination of five hundred dollars each, by Harbach to the defendant, and of an embezzlement of said bonds by the defendant. The defendant objected to the introduction of evidence of the embezzlement of more than one bond, under this count, for the reason that the count correctly charged the conversion of one bond only, and that the defendant, under this count, could be convicted of the embezzlement of one bond only; but the evidence was admitted."

" The evidence under the first and second counts tended to show, that Harbach delivered to the defendant three five hundred dollar bonds and one bond of one thousand dollars, the

three former in the fall of 1863 and the latter in 1864; and that, some time after the delivery of the latter, in 1866, Harbach called upon the defendant for said bonds, upon two occasions, and the defendant stated at each interview that he could not lay his hands upon the bonds'; that she demanded them, and said that she wanted them and nothing else; that at the second interview he attempted a settlement with her, and gave her his note, which has never been paid, and a life policy on his own life for a thousand dollars, which was worthless; and that he never delivered the bonds to Harbach or to any one in her behalf. There was no other evidence tending to show a conversion of said bonds by the defendant, or the time of such conversion, if any. The defendant requested the judge to instruct the jury that, if the bonds described in the first and second counts were converted by the defendant to his own use at the same time, it would constitute but one offence, and, in order to convict the defendant upon these two counts, the jury must be satisfied, upon the evidence, that the bonds were converted at two different times; that the fact that the bonds were delivered to the defendant at different times furnished no evidence that he converted them at different times to his own use; and that there was no evidence upon which the jury were authorized to find that the bonds were embezzled by the defendant at two different times. The judge declined to give any of these instructions, but instructed the jury that they were authorized to find the defendant guilty upon both counts, upon the evidence introduced, if the jury were satisfied, beyond reasonable doubt, thereby, that the bonds were intrusted to the defendant upon the trust and confidence set forth in each of said counts respectively, and that while in each instance said trust and confidence continued he converted, fraudulently, the bonds so intrusted him to his own use."

"Under the third count the evidence tended to show that Bartlett gave the note to the defendant to carry to the Lancaster National Bank, to get the said note discounted for said Bartlett; that the defendant sent said note to said bank with several notes belonging to the defendant, by mail, requesting

the cashier to discount the same, and place the proceeds to the defendant's credit, which was done; that afterwards Bartlett asked the defendant for the proceeds of said note once or twice, and the defendant replied that he could not pay the money then; and that he had never paid him said proceeds, or any part thereof. The defendant was a director in said bank, and kept an account there, but Bartlett kept no account at said bank. About four weeks after the discount of said note, the defendant paid a sum of money to Socrates Jewett, according to the request of Bartlett to pay said sum to said Jewett, out of the proceeds of said note. Upon this evidence the defendant requested the court to rule, that the jury were not authorized to convict the defendant of an embezzlement of the note; which the judge declined to do, and instructed the jury that they were authorized to convict the defendant under the third count, upon said evidence, if they were satisfied thereby, beyond reasonable doubt, that said note of Perley Bartlett was intrusted to the defendant upon the trust and confidence set forth in the third count, and that while the same continued the defendant fraudulently converted said note to his own use.

" Under the fourth count the evidence tended to prove that the bonds were intrusted to the defendant by Beaman to hold as collateral security for the indorsement of said Beaman's note by the defendant; that said note was paid at maturity by Beaman; and that, about two weeks afterwards, he called upon the defendant for said bonds, and the defendant replied that he had occasion to use them, that he wanted a little money, and had pledged them at the bank, and would get them in a few days. To this statement of the defendant to Beaman the latter made no reply. The defendant never redelivered said bonds to Beaman, nor to any one in his behalf. The defendant asked the judge to rule that there was no evidence of the conversion of the bonds by the defendant while the same ' were in the custody and possession of said Butterick, as security as aforesaid, and before the trust and confidence aforesaid was terminated,' as alleged in the indictment, and that the jury could not convict upon said evidence. The judge declined so to rule, and in-

structed the jury that they were authorized to find the defendant guilty upon this evidence, if the jury were satisfied thereby beyond reasonable doubt, that the bonds of Beaman were deposited in the hands of the defendant upon the trust and confidence set forth in the fourth count, and that while said trust continued the same were fraudulently converted to his own use by the defendant. There was no other evidence tending to show a conversion of said bonds by the defendant, nor the time of said conversion.

" The defendant asked Beaman, the only witness under said fourth count, upon cross-examination, these questions : ' Should you have consented to the use of the bonds, as alleged by the defendant, if you had been asked at the time ? ' ' At the time of delivering the bonds to the defendant had you any objection to such use of them by him ? ' To these questions the district attorney objected, as immaterial. The defendant asked them for the purpose of proving that the relations between Beaman and the defendant were of such a nature that the defendant had a right to presume that Beaman would consent to such use of the bonds, and would ratify the same. But the judge excluded the questions."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*G. F. Hoar & G. A. Torrey,* for the defendant.

*C. Allen,* Attorney General, for the Commonwealth.

FOSTER, J.   1. The objection that the description of the property alleged to have been embezzled is vague and indefinite does not appear to be well founded. The language used is sufficiently definite and intelligible to identify the property and show that it was such as may be the subject of embezzlement. No greater particularity of description is requisite in an indictment for embezzlement than in one for larceny, in which such a description would be sufficient. *Commonwealth* v. *Stebbins,* 8 Gray, 492. *Commonwealth* v. *Concannon,* 5 Allen, 506. *Commonwealth* v. *O'Connell,* 12 Allen, 451. Gen. Sts. *c.* 161, § 42.

2. It was not necessary to show that the several bonds were misappropriated by separate acts, or at different times, in order

to justify a conviction on each of the counts in which the bonds are separately described. In this respect the law of larceny and embezzlement is alike. And it is an ancient and well established rule that the taking of divers articles at one time may be treated as constituting a distinct larceny of each article stolen. 2 Russell on Crimes, (4th Eng. ed.) 127. 2 Hale P. C. 246.

3. The defendant, having received a note for the purpose of causing it to be discounted for Perley Bartlett, misappropriated and embezzled the note itself, when he sent it to the cashier with other notes of his own to be discounted on his own private account and procured the proceeds to be passed to his own credit. The verdict of the jury establishes the fact that this was done with a fraudulent and felonious intent. If so, the act of embezzlement was complete as soon as the note was delivered to the cashier to be thus misused; and of course the subsequent payment of a part of the money on Bartlett's account and at his request could not purge the previous criminal act, or relieve the defendant from its penal consequences.

4. With reference to the bonds pledged to the defendant by Beaman to secure a debt on which the defendant was liable as indorser, and which Beaman paid at maturity, we fail to perceive the force of the suggestion that the trust on which the defendant held them terminated on payment of the note. After its payment relieved the defendant from liability, he still held the bonds in his custody, upon the further trust to restore them to Beaman on demand; and then, if not before, he might be guilty of embezzlement by fraudulently misappropriating them. It does not appear by the indictment, or the evidence, at what precise time the fraudulent act of conversion was committed. It may have been after the note was paid. If so, a fraudulent and wrongful pledging of these bonds for the defendant's own debt amounted to embezzlement. *Commonwealth* v. *Tenney,* 97 Mass. 50.

5. The questions proposed to Beaman on cross-examination were properly rejected. The inquiry, what the witness would have done if the defendant had done something which he did not do, was wholly irrelevant, and admitted of only a conjectural

answer. No legitimate inference could be drawn from the opinion of the witness as to his probable conduct in a contingency which never existed. So also the question, whether the witness had any objection in his own mind to the defendant's doing an act not contemplated or proposed or spoken of by either party, had no tendency to show a consent or authority given to do the act. *Stewart* v. *Harvard College*, 12 Allen, 58. The unauthorized pledging of the bonds for the defendant's own debt was a conversion, and the jury have found that it was committed with a fraudulent intent.

6. But there is another objection to the conviction on the fourth count, which in our opinion must prevail. Whether one who held the property of another as collateral security could have been convicted of embezzlement for pledging it to secure his own debt, if there were no statute provisions specially applicable to such a case, we need not decide. The Gen. Sts. *c.* 161, § 64, provide that the punishment for disposing of collateral security before the debt is due to secure which it has been given shall be a " fine not exceeding five hundred dollars, or imprisonment in the state prison or jail not exceeding two years." The punishment for embezzlement is by § 35 of the same chapter made the same as that for simple larceny. By § 18 the punishment of larceny depends on the value of the property stolen, and, where that exceeds one hundred dollars, as it did in this case, the offence may be punished by imprisonment in the state prison not exceeding five years or by fine not exceeding six hundred dollars and imprisonment in the jail not exceeding two years. If then the defendant disposed of the bonds pledged to him by Beaman before the note which was paid at maturity was due, and while he held them as collateral security, he committed an offence punishable under the sixty-fourth section, and not the crime of embezzlement, which is the one charged in the fourth count. But the instruction of the court permitted the jury to find a verdict of guilty in either case, and did not point out the distinction which we have just indicated. For this reason there must be a new trial on this count only, unless the government elect to enter a *nolle prosequi*.

7. The motion to quash the several counts cannot be sustained. After the decision of *Commonwealth* v. *Smart*, 6 Gray, 15, in 1856, the St. of 1857, *c.* 233, (Gen. Sts. *c.* 161, § 35,) considerably enlarged the crime of embezzlement. *Commonwealth* v. *Hays*, 14 Gray, 62. As the law now stands, the nature of the trust on which the defendant held the property of Harback was sufficiently set forth, and it appears on the face of the indictment that he held it under such circumstances that by its fraudulent conversion he might be guilty of embezzlement.

There was no need of any special averment that the title to the several pieces of property embezzled continued in the parties who intrusted them to the defendant down to the point of time when the embezzlement was committed. This sufficiently appears in each of the counts. No more precise statement in this respect is usual; and the indictment in this particular conforms to approved precedents. *The King* v. *Johnson*, 3 M. & S. 539. The ownership at the date of the delivery of the property to the defendant is aptly alleged, and this may well be presumed to have continued, inasmuch as it is averred that the embezzlement occurred while the trust continued on which the property was received. No particulars of the act of embezzlement need be stated. Gen. Sts. *c.* 161, § 42.

The observations already made sufficiently dispose of the motion to quash the fourth count. But no conviction can be maintained upon it unless the fraudulent conversion took place after payment of the debt as security for which the bonds were pledged to the defendant.

*Motion to quash overruled. Exceptions sustained upon the instructions as to the fourth count only.*