GEORGE K. MOREHOUSE v. STATE OF NEBRASKA.

[FILED NOVEMBER 10, 1892.]

1. Embezzlement: FRAUDULENT PLEDGING OF PROPERTY BY COMMISSION AGENT. An agent who, having received property of another to sell on commission on certain prescribed terms, fraudulently, and without the knowledge and consent of the owner thereof, pledges it for money borrowed by the agent for his own use and benefit, with the intent to deprive the owner of his property, is guilty of embezzlement.

2. ——: EVIDENCE in this case examined, and *held* sufficient to warrant a conviction for that offense.

· ERROR to the district court for Douglas county.    Tried
below before ESTELLE, J.

*George S. Smith*, for plaintiff in error.

*George H. Hastings, Attorney General,* contra.

NORVAL, J.

Plaintiff in error was tried and convicted in the court
below upon an information charging him with the embez-
zlement of six pianos, of the value of $1,370, all being the
property of Chickering, Chase Bros. & Co., a Chicago cor-
poration.   From the judgment of the court, requiring him
to be imprisoned in the penitentiary at hard labor for the
term of four years, he prosecutes error to this court.

Numerous errors are assigned in the motion for a new
trial, and in the petition in error, but one of which is now
relied on for a reversal, namely, that the verdict is against
the evidence.   It appears from the testimony in the bill of
exceptions that plaintiff in error was engaged in the sale
of musical instruments in the city of Omaha; that on the
17th day of December, 1890, he entered into a written
contract with Chickering, Chase Bros. & Co., a corporation
doing business in Chicago, for the sale, on commission, of
pianos owned and handled by said corporation, as its agent.
By the terms of the contract, all goods furnished by the
company were to be held by Morehouse upon consignment
and were to be sold on such terms as the company should
direct.   All moneys, notes, or other property received from
the sale of instruments were to belong to the company.
. All notes and leases for instruments were to be taken on
blanks furnished by the company, payable to its order, se-
cured by lien on the instruments sold, and subject to the
company's approval.   The instruments were to remain the
property of the company until they were sold, and instru-
ments taken back from customers on account of default in

payments, or for other causes, and all new or second-hand instruments taken in exchange, or in part payment for instruments consigned by the company were to be regarded as goods consigned, and to be accounted for in the same manner. Morehouse was to report on the first day of each month all instruments received and sold, as well as those remaining on hand unsold, and was to make prompt returns as sales were made. The agency was to be terminated at any time by either party, and all instruments at such time remaining unsold were to be delivered free of charge or expense of any kind to the company upon demand. Morehouse was to receive as commission for his services such sum or sums as he should sell the instruments consigned to him for in excess of the invoice prices.

It further appears that under said contract six pianos of the value of $1,370 were shipped by the company to plaintiff in error in the month of December, 1890, and the same were received by him at his place of business in Omaha. Subsequently, on the 3d day of January, 1891, Morehouse executed and delivered a bill of sale on five of the instruments to one C. F. Orff, to secure the payment of a loan of money. The other piano, No. 3,633, was taken by plaintiff in error to his residence, and afterwards, on the 12th day of January, 1891, he made and delivered to one C. De Roberts a bill of sale thereof to secure a pre-existing indebtedness and the payment of the further sum of $50 at the time borrowed of De Roberts. Each bill of sale was given without the knowledge or consent of the corporation, and it did not receive any of the moneys for the payment of which they were given to secure. Each recited in the body thereof that the property therein described belonged to Morehouse.

It is conceded that after the giving of said bills of sale, and while said agency contract was in full force, Morehouse formed a partnership with one Charles E. Morrill, and for a time the business was carried on under the firm

name of Morehouse & Morrill, although the contract of agency remained unchanged and in the name of Morehouse. With the money received from Morrill for a half interest in the enterprise, Morehouse paid off all the indebtedness for which the pianos had been pledged as security, except the indebtedness to De Roberts, which has never been paid. It also appears from the testimony that on the 5th day of March, 1891, plaintiff in error sold his interest in the partnership to his partner Morrill, and at the time gave him a bill of sale covering the six pianos in controversy and other property, by the terms of which, and as a part consideration for the giving of the same, Morrill agreed and assumed to pay certain specified indebtedness of the firm, amounting to $1,065.85. A portion, if not all, of such indebtedness has since been paid by Morrill. There is no conflict in the testimony as to any of the facts above stated. The state also introduced evidence which tended to show that Morehouse represented to Morrill prior to the giving of the last bill of sale that he was the owner of the pianos and had paid for the same; that he exhibited to Morrill a forged receipted bill of the instruments, which purported to be signed by Chickering, Chase Bros. & Co., and that plaintiff in error also opened an account upon his books with the company, in which he charged himself with the six pianos at $1,370 and credited himself with cash $1,370, although he had never paid any part of said sum. Morrill admits making the receipted bill of the instruments as well as the entry upon his books of the cash payment above mentioned, but claims that he entered the same through mistake; but his explanation is entirely unsatisfactory. He testified that the credit should have read, "goods," instead of "cash," yet upon cross-examination he admits that he had never returned any goods to the company. The evidence shows that five of the pianos, the company, through a compromise with Morrill, has recovered back, but that it has never received the one pledged to

De Roberts, which had been taken by him under his bill of sale, and its whereabouts is unknown to the company.

In the brief of counsel for plaintiff in error it is urged that the bill of sale given to Morrill was obtained by duress and threats made by the latter, but we find no foundation for such claim in the evidence. Morehouse in his testimony makes no claim that he was induced by threats to make the bill of sale, but insists that he gave it for the purpose of placing his property beyond the reach of his creditors, in which statement he is contradicted by Morrill. The evidence contained in the bill of exceptions tends to prove that plaintiff in error claimed to be the absolute owner of the instruments in question; that he received the same as the agent of Chickering, Chase Bros. & Co., and that he converted the property to his own use with a fraudulent intent, by pledging the same for money borrowed, and by transferring the pianos by a bill of sale to Morrill. The fraudulent and wrongful pledging of the instruments by plaintiff in error for money borrowed and to secure the payment of his own indebtedness, without the consent of the owner, amounts in law to embezzlement. (*Commonwealth v. Butterick*, 100 Mass., 1; *Commonwealth v. Tenney*, 97 Id., 50.) The fact that the company finally received back some of the instruments does not relieve the act of its criminal nature. We are of the opinion that the evidence sustains the verdict. The judgment of the district court is

AFFIRMED.

THE other judges concur.