CHARLES A. CLOUGH & others *vs.* EMMA F. CROMWELL & others.

DUNCAN A. CARMICHAEL *vs.* SAME.

Dukes County.    October 27, 1924. — November 25, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, & SANDERSON, JJ.

*Partition. Probate Court*, Partition proceedings: commissioner's report; Appeal. *Evidence*, Competency, Presumptions and burden of proof.

Statement by SANDERSON, J., of the duties of, and nature of proceedings before, commissioners appointed by a probate court upon a petition by tenants in common for a partition of real estate.

Where commissioners appointed in partition proceedings to hear the parties, appraise the real estate, make partition thereof, and make a return of their doings, report to the court that they find that the land "cannot be partitioned, without great inconvenience to other owners and great depreciation in value to the whole . . . [and] recommend that the property described in the foregoing warrant be sold at Public Auction, and the proceeds be divided according to each owner's interest," and the court hears the parties upon the question whether a sale and distribution of the proceeds thereof should be ordered, testimony heard by the commissioners is not a part of the record in the case and should not be considered by the judge in deciding whether the partition should be by sale.

A judge, who heard partition proceedings in the circumstances above described, ruled, in substance, that a copy of the testimony before the commissioners as filed by them was a part of the record in the case, not as a part of the record as introduced in the hearing before him but a part of the records of the case as filed by the commissioners. In response to an inquiry by counsel at the close of the evidence as to whether the court would take into consideration the evidence before the com-

missioners as reported by them, the judge stated, "I will certainly go over the commissioners' evidence, because that is practically all the evidence I have got." On appeal from a decree ordering a sale and distribution, it was *held*, that it was impossible on the record to ascertain whether the testimony before the commissioners, wrongly considered by the judge, affected his judgment; and the case therefore was remanded to the Probate Court for the determination of the question, whether the land could be advantageously divided, upon competent evidence at a rehearing of the case on that issue.

Commissioners, appointed, in proceedings upon a petition by tenants in common of certain real estate for its partition, to give notice to persons interested of the time and place appointed for making partition, to appraise all of the real estate, to make partition thereof according to law, and to make return of their doings, reported that the land could not "be partitioned, without great inconvenience to other owners and great depreciation in value to the whole" and recommended "that the property described in the foregoing warrant be sold at Public Auction, and the proceeds be divided according to each owner's interest." *Held*, that it was proper for the judge to refuse to rule that the burden of proof that the land could not be advantageously divided was on the party seeking a decree for sale.

*It seems* that, at the hearing above described, the court before ordering a sale must find by a preponderance of the whole evidence that the land could not be advantageously divided, but this does not mean that in partition proceedings the burden of proof on this issue was on one party or the other.

At the hearing above described, other reasons besides damage to profits might be taken into consideration by the court in deciding whether the property might be advantageously divided, and it was proper for the judge to refuse to rule that, if it appeared that a fair division of the land would not seriously damage the profits from the whole parcel so long as the respective owners use their respective parts in a reasonable manner, such division could not be found to be disadvantageous.

At the hearing above described, the question, whether the property sought to be partitioned could be advantageously divided, was a question of fact for the trial judge to decide upon all competent evidence bearing on that issue, and it was for him to decide what weight should be given to evidence relating to various elements entering into a determination of that question; and requests, that he make certain rulings as to the bearing and weight of any specified evidence in determining that question, properly were refused.

Two PETITIONS for partition of real estate in West Tisbury and Edgartown, filed in the Probate Court for the county of Dukes County respectively on May 8, 1922, and on June 27, 1922, as described in the opinion.

The interests of the respective parties in the two petitions were as follows:

### Parcel 1.

| | |
|---|---|
| Daniel C. Look | three quarters |
| Charles A. Clough | one thirty-second |
| Orland S. Mayhew | one thirty-second |
| Duncan A. Carmichael | one thirty-second |
| Paul E. Moller | one thirty-second |
| Charles R. Barnett | one thirty-second |
| John E. Howland | one thirty-second |
| Lombard C. Jones | one thirty-second |
| Emma F. Cromwell | one ninety-sixth |
| Robert E. Cromwell | one ninety sixth |
| Benjamin C. Cromwell, 2d | one ninety-sixth |

### Parcel 2.

| | |
|---|---|
| Daniel C. Look | one half |
| Charles A. Clough | one sixteenth |
| Orland S. Mayhew | one sixteenth |
| Duncan A. Carmichael | one sixteenth |
| Paul E. Moller | one sixteenth |
| Charles R. Barnett | one sixteenth |
| John E. Howland | one sixteenth |
| Lombard C. Jones | one sixteenth |
| Emma F. Cromwell | one forty-eighth |
| Robert E. Cromwell | one forty-eighth |
| Benjamin C. Cromwell, 2d | one forty-eighth |

The petitioners in the first petition were Charles A. Clough, Orland S. Mayhew, Duncan A. Carmichael, Paul E. Moller, Charles R. Barnett, John E. Howland, and Lombard C. Jones.

The petitioner in the second petition was Duncan A. Carmichael.

Proceedings in the Probate Court are described in the opinion. From a decree, entered by order of *Davis*, J., ordering in each case a sale by public auction and a distribution of the proceeds, Emma F. Cromwell, Robert E. Cromwell, and Benjamin C. Cromwell, 2d, appealed.

*G. M. Poland*, (*A. W. Davis* with him,) for the appellants.
*T. F. O'Brien*, (*S. E. Bentley* with him,) for the appellees.

SANDERSON, J. These are two petitions for the partition

of land in West Tisbury and Edgartown on the southerly shore of Martha's Vineyard. The cases come up by appeal from a decree in each case ordering a sale of the property at public auction.

In the first petition, filed May 8, 1922, seven individuals joined as petitioners against three respondents for a partition of all the land in question. Later, when it appeared that one Daniel C. Look, not a party to the petition, was a part owner of two of the lots described therein, an amendment was filed eliminating them from the first petition, and a second petition was brought for the partition of those two lots. For convenience the first may be referred to as the Clough case; the second as the Carmichael case. The title and fractional interests of the parties as tenants in common were not in dispute. The seven petitioners in the Clough case own collectively seven eighths undivided interest in the land and the respondents Cromwell own collectively one eighth. In the Carmichael case the petitioner Carmichael and the six persons associated with him who were petitioners in the first case own seven thirty-seconds interest in one parcel and seven sixteenths in the other; Look owns a three-quarters interest in one parcel and a one-half interest in the other; and the respondents Cromwell own collectively a one thirty-second interest in one and a one-sixteenth interest in the other parcel. The premises described in both petitions taken together form a lot somewhat triangular in shape, bounded southerly by the sea for about a mile and a half; easterly by a great pond, called Oyster pond, for about a mile and a half; northwesterly by an irregular line partly running across a great pond called Watcha pond and partly upon another great pond called Nahomans pond. A plan of the land, which divided the property into several lots, was used at the trial and at the argument before this court.

On June 5, 1923, an interlocutory decree was entered in each case that partition of the real estate be made and that three commissioners be appointed to make partition according to the rights of the parties interested. It appeared from the decrees that the petitioners in the Clough case requested that their respective shares in all the land be set off to them

to hold as tenants in common, and that the respondents Cromwell made a similar request in regard to their interests. A warrant was issued to the commissioners directing them, after being sworn, to give notice to persons interested of the time and place appointed for making partition; to appraise all of the real estate; to make partition thereof according to law; and to make return of their doings. The commissioners were duly sworn, gave notice as required by the warrant, and appraised all the real estate. These valuations are not in question. A report signed by two of the commissioners stated: " . . . a full report of all testimony we herewith enclose. . . . We have visited the premises . . . . Have tried many ways to bring all parties concerned to some agreement whereby we could make a unanimous report of some definite agreement between petitioners and respondents but have failed to do so, the majority of the commission find the land described in the foregoing warrant cannot be partitioned, without great inconvenience to other owners and great depreciation in value to the whole . . . [and] recommend that the property described in the foregoing warrant be sold at Public Auction, and the proceeds be divided according to each owner's interest." This report was assented to by all the petitioners in the Clough case. The third commissioner filed a " Minority Report " assented to by the respondents Cromwell. In it he concurred with the report signed by the other two in so far as it related to appraised value of the property and individual shares, and the items of expense, and dissented from all the rest of the report. In this " Minority Report " the commissioner stated in detail his reasons for believing that the property could be divided and suggested a plan therefor. Majority and minority reports of similar purport were filed in the Carmichael case. The cases then came on for hearing in the Probate Court where witnesses, both for the petitioners and the respondents, testified concerning the property. The respondents Cromwell took exceptions to the admission of certain evidence, to the refusal of the court to rule as requested, and to rulings made by the court. Thereafter the court entered a decree in each case ordering partition among the tenants in common named

in the petition, in the proportions therein stated, and appointing one person commissioner to make partition, directing him to make sale and conveyance of all the land at public auction for cash and to distribute the net proceeds in such manner as to make the partition just and equal. The court in compliance with a request by the respondents made a report of material facts and included therein and made a part of the report the evidence taken at the hearing with the rulings of the court in connection therewith. The questions raised, and now relied upon by the appellants, will be considered in the order in which they are stated in their brief.

The first ground of appeal is that the judge erred in ruling that the transcript of testimony and proceedings before the commissioners was a part of the record of the case to be considered by him.

Proceedings before commissioners are not subject to the rules of law applicable to the trial of causes in court. Commissioners are in the nature of arbitrators. They " were selected by the court as competent of themselves to make the partition, and it was for them to determine what aid of witnesses they would accept in doing it." They may permit parties to state their preferences as to what division should be made and to give their reasons therefor and may exclude opinions of witnesses as to the effect of any particular division upon either party. They were not in law obliged to hear any witnesses. *Hall* v. *Hall*, 152 Mass. 136, 138, 140. "The only questions which can arise upon their report, are such as have relation to the regularity of their own proceedings. If they have not conformed in all respects to the directions given them, their report may be set aside, . . . But if there has been no irregularity, and if they have divided the estate according to the requirements of the interlocutory judgment, it will be accepted and confirmed by the court." *Brown* v. *Bulkley*, 11 Cush. 168. Upon a petition for a writ of certiorari against county commissioners who had made a finding and order relating to an abatement of a tax, it was held to be no part of the county commissioners' return to set forth a report of the evidence

on which they based their findings. Such a report " would have been an unnecessary encumbrance of the record." *Westport* v. *County Commissioners,* 246 Mass. 556. Even in the case of masters, the evidence is not to be reported without an order by the court. *Aronson* v. *Orlov,* 228 Mass. 1, 9. The testimony heard by the commissioners is not a part of the record in the case and should not be considered by the judge in deciding whether the partition should be by sale. The responsibility of deciding whether real estate is to be divided or sold is upon the Probate Court. The decision must be made upon legal evidence to which parties have a right to object. *Eveleth* v. *Crouch,* 15 Mass. 307. *Sullings* v. *Richmond,* 5 Allen, 187, 192. *Hastings* v. *Rider,* 99 Mass. 622, 625. *Mackintosh, petitioner,* 246 Mass. 482. The judge ruled, subject to the appellants' exception, that testimony filed by the commissioners upon which they based their findings is a part of the record of the case, " Not as a part of the evidence as introduced at this hearing, part of the records of the case as filed by the commissioners. In other words, it is part of their report." At the close of the hearing counsel for the appellants stated, " We understand that the court in addition to the evidence offered today is to take into consideration the commissioners' evidence." The judge replied: " I will certainly go over the commissioners' evidence, because that is practically all the evidence I have got." It being impossible for this court to know whether this testimony, which ought not to have been considered by the judge, affected his judgment in deciding that the partition should be by sale, the case must be remanded to the Probate Court for the determination of the question, whether the land can be advantageously divided, upon competent evidence at a rehearing of the case on that issue.

The second contention of the appellants is that the judge erred in refusing to give their request that the report of the majority of the commissioners should be set aside because it did not conform to the precept in their warrant. The first statute which authorized a sale upon a petition for partition was enacted in 1870. It was therein provided that if the commissioners to make partition became satisfied that a

partition could not be made without great injury they were to report the same to the court and the court after due proceedings might order a sale to be made by a trustee. This law was repealed by St. 1871, c. 111, which contained substantially the provisions which appear in Pub. Sts. c. 178, § 65. In G. L. c. 241, § 31, the phraseology was changed but the meaning remains the same. In *Ramsey* v. *Humphrey*, 162 Mass. 385, the court in considering the effect of the repeal of St. 1870, c. 257, and the enactment of St. 1871, c. 111, said, at pages 386, 387, " By force of these provisions, the court, subsequently to the time of appointing commissioners, and after such notice to all persons interested as may be required, may order the commissioners to make a sale. The language of the statute is broad enough to authorize the court to pass such an order after the commissioners have made their report as well as before, and we see no reason for giving it a narrow or restricted meaning. . . . St. 1871, c. 111, was intended to enlarge rather than to restrict the power given to the court by St. 1870, c. 257, which it repealed. It gives the court power in its discretion to order a sale by public auction in any case where lands cannot be advantageously divided, and at any time before partition has been decreed. It may often happen that the true situation of an estate in reference to the feasibility of dividing it will appear much more clearly after the commissioners have attempted to divide it, or to set off the whole or a large share to one who is to pay money to the others, than before their attempt, and it seems to us that this provision for ordering a sale at any time in the discretion of the court is wise and just." It is no part of the commissioners' duty to decide that partition should be made by sale. But it is in accordance with the spirit of the law on the subject, and a compliance with the requirement that the commissioners report their doings to the court, for commissioners, who have attempted to make partition and found it impossible to do so, to report this fact to the court.

The appellants' third contention is that the court erred in refusing to grant their request that the burden of proof that the land cannot be advantageously divided is on the party

seeking a decree for sale. The court must find by a pre-
ponderance of the whole evidence that the land cannot be
advantageously divided before ordering a sale. But this
does not mean in partition proceedings that the burden of
proof on this issue is on one party or the other. The argu-
ment that the petitioners have the burden of proving that
the land cannot be advantageously divided is no stronger
than the argument that the respondents have the burden of
proving that it can be advantageously divided. The pe-
titioners ask for a partition in the form required by G. L. c.
241, § 6, and have the burden of proving the essential allega-
tions in their petition. An allegation that the land cannot
be advantageously divided is not required by the statute.
The court decides whether partition shall be by division or
sale. If, in the course of the proceedings, one party con-
tends that on the facts shown there should be a sale, and the
other that there should be a division, this does not mean
that the party making either of these contentions has the
burden of proof.

The appellants' fourth contention is that the judge erred
in refusing to grant their request that if it appears that a fair
division of the land would not seriously damage the profits
from the whole, so long as the respective owners use their
part in a reasonable manner, such division cannot be found
to be disadvantageous. This request does not accurately
state the law. Other reasons besides damage to profits
may be taken into consideration by the court in deciding
whether the property may be advantageously divided. In
*Hunt* v. *Hapgood*, 4 Mass. 117, the court in considering
whether an estate could be divided among all tenants in
common " without prejudice to, or spoiling the whole,"
said: " These words import a case where the shares divided,
from the nature of the estate, would be worth but little, as
in the case of a dwelling house, or some small parcel of land,
the respective shares of which, holden in severalty, would be
of much less value than when holden together." In *Heald* v.
*Kennard*, 180 Mass. 521, 522, the court said: " The con-
siderations which determine whether land can be divided
advantageously no doubt have reference mainly to the

physical conditions of the land to be divided, but the advantage or disadvantage generally must be pecuniary. . . . In this case [which was a petition for partition of a cranberry bog] the advantageousness of the division was in part a question of market values, and from this point of view we are of opinion that the judge was warranted in considering the *de facto* condition of the premises. We cannot say that he was wrong in finding that the practical advantages were so greatly in favor of a sale that it ought to be ordered. There is no reason to doubt that he took into account the chances attending an auction sale of this property and the danger alleged by the respondent that his rights will be sacrificed, as well as the probabilities of an agreement between the parties as to the use of the water in case of partition." At the request of the respondents Cromwell the court ruled that the disadvantageous results from a division of the land which would authorize the court to order partition by sale, must be based mainly upon the physical condition of the land and must be principally pecuniary; and also that " In order to warrant a finding that the land cannot be advantageously divided, it must appear that a division would cause substantial damage to the whole, or that a division would lessen the profits to be derived from the whole together."

The appellants' fifth contention is that the judge erred in refusing to grant their request for a ruling that, the respondents Cromwell now having full right to shoot over the whole land in any manner they please, no damage to the petitioners' shooting rights can be found to result from the proposed division which restricts said respondents to a small part of the whole land. The proposed division to which the request refers, is that suggested in the minority report. It could not be ruled as matter of law that the restriction of the respondents to a small part of the land would not damage the petitioners' shooting privileges. This was a question of fact.

The appellants' sixth contention is that the judge erred in finding and ruling that the premises cannot be advantageously divided by physical division without great damage

to the total value, and in the consequent ruling that partition should be made by sale.    At the appellants' request the court ruled that " Advantageously " and " without great inconvenience " are synonymous terms for the purposes of this case, and each is to be construed as meaning " without great damage to the whole "; that " it is erroneous to treat the land in question solely as a duck shooting preserve "; that " In addition to its value for shooting wild fowl, the court should consider the value of the land for real estate development, for summer residences, and for general recreation purposes," and that " There is no evidence to warrant a finding of disadvantage from division, except that relating to the element of wild fowl shooting."    Whether the property could be advantageously divided is a question of fact for the trial judge, to be decided by him upon all competent evidence bearing on that issue; and it is for him to decide what weight should be given to evidence as to shooting privileges in determining the value of the land, and the damage thereto which would be caused by a physical division.

For the reasons stated in the discussion of the appellants' first ground of appeal, the decrees are reversed; and the cases are remanded to the Probate Court for further hearing in accordance with this opinion to determine the question whether the land can be advantageously divided, and for the entry of such decrees by the Probate Court as the facts found at such hearing justify.

*Ordered accordingly.*