COMMONWEALTH *vs.* CHARLES J. O'CONNELL.

Worcester.  January 12, 1931. — January 28, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Larceny. Partition,* Embezzlement by commissioner. *Evidence,* Competency. *Practice, Criminal,* Exceptions, Charge to jury, Argument to jury.

At the trial of an indictment under G. L. c. 266, § 57, charging the defendant with fraudulent conversion of money, there was evidence that the defendant was appointed by a probate court a commissioner to partition real estate of a man among his issue in certain specified proportions, his widow having died subsequent to his death; that the defendant sold the real estate, paid two of the man's issue their shares and deposited the balance of about $2,500 in a bank; that, at the end of the month in which the deposit was made, the defendant's balance was only about $150; and that later he made certain payments to others of the man's issue, in amounts substantially less than those

to which they were entitled. The defendant testified, and his report as commissioner stated, that he set aside one third of the sale price of the land, about $1,600, as the "distributive share" of the man's widow, and turned it over to himself as the administrator of her estate. He further testified that he had thrown away his bank statements, checks and check stubs and that he had nothing to show what drafts had been made upon the deposit in the bank. *Held*, that

(1) An exception by the defendant to the exclusion of an inventory, made by him as administrator of the widow's estate after the question of his accounting as commissioner had arisen and demand had been made upon him, and showing the one item of about $1,600, which was offered in cross-examination of a witness who testified he had never seen it, must be overruled, since, assuming that the evidence was competent notwithstanding its self-serving character, the defendant's rights were not prejudiced because his report as commissioner, showing such payment to himself as administrator, was in evidence and he also testified that the item was in the`inventory and that the widow had no other property;

(2) Conversations between the defendant and counsel for certain of the man's issue after the time of the alleged conversion, offered to prove that an agreement as to the amount then due from the defendant had been reached, rightly were excluded;

(3) The Commonwealth was not required to prove that the exact amount alleged was held in trust by the defendant nor that the whole amount had been fraudulently converted by him;

(4) The defendant's intentional act in violation of the warrant of the Probate Court, which deprived some of the man's issue of money to which they were entitled under the partition, amounted to a fraudulent conversion of such money;

(5) It was no defence to such act that the defendant appropriated such money to the benefit of the widow's estate under belief that the Probate Court had made a mistake in the warrant and that her estate was entitled to share in the proceeds of the sale, even if such facts appeared;

(6) The evidence warranted a verdict of guilty;

(7) No substantial error appeared in certain portions of the charge to the jury upon the issues of law involved.

A general exception, to certain portions of the charge to the jury at the trial of an indictment, without specification of grounds of objection and without requests for rulings by the excepting party, must be overruled unless substantial error or injustice plainly appears.

No error appeared, at the trial of an indictment, in a refusal by the trial judge to allow counsel for the defendant to make to the jury an argument which was unsound in law and not a defence even if true; and in stopping counsel twice upon his attempting to make such argument.

INDICTMENT, found and returned on August 21, 1930.

The indictment was tried in the Superior Court before *T. J. Hammond*, J. Material evidence is stated in the opin-

ion.  The judge denied a motion by the defendant that a
verdict of not guilty be ordered.  The defendant was found
guilty.  He alleged exceptions.

*M. M. Taylor,* for the defendant.

*A. S. Houghton,* Assistant District Attorney, for the
Commonwealth.

SANDERSON, J.  The indictment, brought under G. L.
c. 266, § 57, alleges that the defendant, as he was a commis-
sioner duly appointed by the Probate Court, and also being
a person upon whom a trust had then devolved, fraudu-
lently converted money in the amount of $1,250 held by
him for the use of John J. and Frank P. Sullivan.

It appeared that on May 14, 1926, the defendant, a
member of the bar, was appointed to make partition of
the real estate of the heirs of John C. Sullivan who died
intestate in 1903, leaving a widow, Catherine, two children,
and four grandchildren, one of whom was the only child
of a deceased child of the intestate, the other three being
children of another deceased child.  The widow died in-
testate on March 16, 1925, and the defendant was ap-
pointed administrator of her estate on November 23, 1925.
The judge decreed that partition of the land be made
among the persons therein named who were the children
and grandchildren above referred to; and that the pro-
portions therein specified were one fourth to each child
and one grandchild, and one twelfth to each of the other
grandchildren.  The warrant to the defendant as com-
missioner gave him specific directions to the same effect
and authorized him to sell the land at private sale for the
sum of $5,000 or for a larger sum and directed him to
present to the court within one month after sale a true
account of the payments made by him.

The defendant in October, 1926, made sale of the real
estate to the two children of John C. Sullivan for the sum
named, giving them a deed and crediting them with one
half of the purchase price and receiving from them the
balance of $2,500.  The defendant testified that after
paying out of the sum received by him $15 for expenses,
he deposited $2,485 on October 13, 1926, in his account as

trustee in the Mechanics National Bank, an account in which other trust funds were deposited; that expenses were paid amounting in all to $188.08 and also that he charged $100 for services, an item concerning which no question was raised at the trial. He also testified that he set apart, out of the proceeds of the sale, $1,666.66 for the estate of Catherine Sullivan on an inventory filed in the Probate Court, and when asked where the cash was testified it was in the Mechanics National Bank in his name as trustee. He said: " It was there in theory . . . . I set it apart in theory from the $2,485 that I deposited on October 13 after the sale." He also testified to making three payments to the attorneys for the three grandchildren who by the warrant issued to him were each entitled to a one-twelfth interest in the estate, and that these payments were made, respectively, on January 22, 1927, May 12, 1928, and January 25, 1929, amounting in all to a payment of $261.61 to each. No other payments have been made to them. He further testified that he had nothing to show what drafts were made on his account as trustee, that he could not tell whether any of the withdrawals were on his personal account, that so far as he knew none of the proceeds of the sale deposited were checked out in October, 1926, that in November, 1929, when he moved his office, he threw away or destroyed all bank statements, checks and check stubs relating to the account. When shown a sworn transcript of the ledger account from the Mechanics National Bank for the month of October, 1926, he testified that so far as he knew that was a correct statement. This account shows among other things a deposit of $2,480 on October 13, 1926, and withdrawals during the month, leaving a balance of $153.64 on October 30. He testified that he never discovered any estate of John C. Sullivan or his widow except that of which he made partition.

The defendant's report to the court as commissioner, sworn to March 30, 1928, and filed April 3, 1928, states that his expenses and charges amount to $188.08 and that he had distributed and paid over the proceeds of the sale

as follows: $1,250 to each of the children of John C. Sullivan, $634.46 to one grandchild, and $211.49 to each of the other three grandchildren. The return also contains the statement that the distributive share of Catherine Sullivan's estate, amounting to $1,666.67, has been turned over to the administrator of her estate. Frank C. Sullivan testified that when he asked the defendant what he intended to do about a settlement, he answered, " He had an aunt or a sister that was coming to his rescue but would not take long before he would have us all fixed up." On December 13, 1926, the three heirs who each held a one-twelfth interest in the estate filed a petition in the Probate Court asking that the defendant be required to account and pay them the sum found to be due and the court entered a decree thereon ordering the defendant to account as commissioner on or before January 1, 1927.

The inventory made by the defendant as administrator of the estate of Catherine Sullivan and filed in the Probate Court on April 23, 1928, contained one item purporting to be a receipt from the commissioner's sale of the real estate in question, " being the dower interest of the deceased in said property, sale price, $5,000, $1,666.66." This inventory was offered during the cross-examination of a witness who testified that he had never seen it. The judge in excluding it referred to the fact that it was filed after the question of an accounting had arisen and demand had been made upon the defendant, and stated as a reason for excluding the evidence that it was offered during the cross-examination. The exception to the exclusion of this evidence must be overruled. The judge in his discretion may control the order in which evidence is to be admitted. *Commonwealth* v. *MacKenzie,* 211 Mass. 578, 581. If it be assumed that the evidence notwithstanding its self-serving character was competent, the defendant's rights were not prejudiced because the report on his warrant above referred to was introduced and he also testified that the item was in the inventory and that the deceased had no other property.

Conversations between the defendant and counsel for

certain heirs after the time of the alleged conversion tending to prove that an agreement as to the amount then due from the defendant had been reached were rightly excluded. Such an agreement, whether accompanied by payments or not, would have no proper tendency to prove that the defendant had not previously fraudulently converted the funds. See *Commonwealth* v. *Pease,* 16 Mass. 91; *Commonwealth* v. *Butterick,* 100 Mass. 1, 10; *Partridge* v. *Hood,* 120 Mass. 403, 405. The evidence to which reference has been made sufficiently demonstrates that the motion for a directed verdict and the requests relating to proof beyond a reasonable doubt, and to the fraudulent conversion of trust funds were rightly denied. The Commonwealth was not required to prove that the exact amount alleged was held in trust for the two heirs named or that the whole amount had been fraudulently converted. G. L. c. 277, §§ 23, 24, 25. *Commonwealth* v. *Warner,* 173 Mass. 541, 544. The request that the mere detention of trust funds by a trustee is not conversion or fraudulent conversion was given in substance. Neither the widow nor her estate was or could properly have been named as entitled to a share in the partition. Her administrator had no interest in the real estate. This descended to her heirs upon her death and they alone were entitled to participate in the partition. No proceedings had been brought to sell her real estate to pay debts. *Gibson* v. *Farley,* 16 Mass. 280. *Newcomb* v. *Stebbins,* 9 Met. 540, 545. *Brooks* v. *Jackson,* 125 Mass. 307, 309. See G. L. c. 190, §§ 1(2), 3(1). These principles were stated to the jury in the charge.

The contention in behalf of the defendant that if he believed the estate of Catherine Sullivan was entitled to share in the proceeds of the sale, and the court had made a mistake in the warrant, and, acting upon that belief he had paid money to himself as administrator, he would not have the fraudulent intent required for conviction, cannot be maintained. In the first place the defendant did not testify that he entertained the belief attributed to him

by counsel. His own testimony seems to refute the contention made in his behalf that he turned over part of the proceeds of the sale to himself as administrator. The deposit of the proceeds of the sale had been so depleted shortly after the deposit was made that in view of his whole testimony it would hardly be possible to infer in his favor that money later paid the heirs came from these proceeds.

The defendant's duty was to obey the order of the Probate Court in making the partition. *Brown* v. *Bulkley,* 11 Cush. 168, 169. *Wonson* v. *Wonson,* 14 Allen, 71, 81. *Savery* v. *Taylor,* 102 Mass. 509, 511. *Clough* v. *Cromwell,* 250 Mass. 324, 329. G. L. c. 241, §§ 18, 20. He intentionally acted in violation of that order in the use made by him of the funds, thus depriving parties entitled to partition of their rights therein to their injury. His intent was to deprive permanently some of the parties of the shares in the proceeds of the sale to which under the warrant they were entitled. Such an act of conversion is fraudulent. *Commonwealth* v. *Peakes,* 231 Mass. 449, 456, 457. If it be assumed that the defendant was ignorant of the law this would not be a defence. *Commonwealth* v. *Everson,* 140 Mass. 292. *Commonwealth* v. *O'Brien,* 172 Mass. 248, 256. *Commonwealth* v. *Middleby,* 187 Mass. 342, 348. Under the circumstances it would not be a defence or justification for the defendant if it had been made to appear that he appropriated the funds for the benefit of the estate of Catherine Sullivan.

The judge stated during the course of the trial that the question was whether the money was unlawfully used by the defendant, and in his charge referred to the specific directions given to the defendant in the warrant, to his duty to follow those directions implicitly, to the proper method of correcting mistakes or errors, if any had been made by the court, and to the fact that the defendant did not have a right to take the law into his own hands. He quoted from the statute under which the indictment was drawn and defined embezzlement as the unlawful

appropriation of property by an individual taking and using for himself money entrusted to him. He further instructed the jury that if a person without right actually takes for his individual use or purposes or otherwise money or property entrusted to him, he is guilty of larceny even though he takes the money with the idea of using it temporarily and later returning it. He also stated that if a person charged with responsibility as trustee takes, uses or misappropriates funds in his charge a later settlement would not affect his position so far as a prior breach of trust was concerned; that the Commonwealth was not required to prove embezzlement of the exact amount stated in the indictment and that the jury might convict if the defendant was found guilty of fraudulent conversion of any part of the funds held by him as trustee.

The defendant undertook to save exceptions to a substantial part of the whole charge by referring to the opening and closing words of portions of it, without stating specifically the grounds of his objections. We are of opinion that no valid exception to the charge was thus saved. The defendant failed properly to point out to the judge the errors alleged and made no suggestions as to what he contended the statements of the law should be. " General exceptions to specific portions of the charge, where no requests are asked for, will not be sustained unless substantial error or injustice plainly appears." *Cronin* v. *Boston Elevated Railway,* 233 Mass. 243, 246. *Commonwealth* v. *Duncan,* 250 Mass. 405. *Commonwealth* v. *Taschetta,* 252 Mass. 158, 160. *Callahan* v. *Fleischman Co.* 262 Mass. 437. We have, however, examined the charge and are unable to find reversible error in respect to the several matters urged in argument by the defendant. It is no defence to a charge of fraudulent conversion that the defendant intended when he misappropriated the money to pay it back.

In the course of his argument counsel for the defendant was stating his contentions that the defendant believed an error had been made in the petition under which he

was appointed, in that the estate of Catherine Sullivan was not named as one of the distributees of the net proceeds from the sale; that the defendant believed her estate was legally entitled to one third of the proceeds as the widow of her husband; that, believing this, he actually set over one third of the net proceeds to himself as administrator of her estate, and distributed the other two thirds to the persons named in the warrant. The judge then said that prior to the beginning of the argument he stated to counsel that he would not be permitted to argue that this defendant was chargeable only with two thirds of the money received, that is, two thirds of the $5,000 less expenses. Counsel then asked to be permitted to repeat what he had said. This request was refused. Counsel then resumed his argument along substantially the same lines as before, when he was stopped again, and he then stated to the jury that he had nothing more to say. He saved exceptions to these rulings and directions. The presiding judge should be the " directing spirit and dominating force of a trial to the end that a just result be reached." *O'Neill* v. *Ross,* 250 Mass. 92, 97. It is his duty to see that improper arguments are not made to the jury. *Commonwealth* v. *Dyer,* 243 Mass. 472, 508. To accomplish this result he may in his discretion stop them when they occur or so deal with them in the charge as to correct their erroneous effect. *Commonwealth* v. *Richmond,* 207 Mass. 240, 250. *Commonwealth* v. *Taschetta,* 252 Mass. 158, 161. *Sayles* v. *Quinn,* 196 Mass. 492, 494. The jury were bound to follow the law as stated by the judge, *Commonwealth* v. *Davis,* 271 Mass. 99, 100, and it was the duty of counsel to conform to the orders and directions given and to refrain from making an argument which he is requested by the trial judge not to make. The defendant's rights are fully protected in respect to such rulings by exception. In the case at bar the defendant has no good ground for objection to the action of the presiding judge in respect to the argument. His counsel was allowed full latitude to make proper arguments in his behalf. The

contentions being urged, and which he was directed not to repeat, were unsound in law and would not have been a defence even if the facts upon which they were based were true. We have discovered no reversible error in any of the exceptions argued.

*Exceptions overruled.*