JANET K. MORGAN *vs*. CAROL K. JOZUS.

No. 05-P-734.

Barnstable. March 1, 2006. - August 1, 2006.

Present: RAPOZA, KANTROWITZ, & GREEN, JJ.

*Probate Court,* Partition proceedings, Findings by judge, Judicial discretion. *Real Property,* Partition. *Value. Evidence,* Value, Cumulative evidence.

In the circumstances of a proceeding in Probate and Family Court for the partition by sale of certain real estate, the judge acted within his authority in vacating a patently ambiguous interlocutory decree [20-21] and in considering as valid on its face an endorsement by the local planning board [21-22].

In an action for the partition by sale of certain real estate, a stipulation entered into by the parties did not resolve the issue of the value of the lots at issue [22]; further, the judge, in valuing the lots, did not err in concluding that the lots were buildable or in ordering their sale on that basis [22-23], and the judge properly left the details of the sale to the appointed commissioner [23].

In an action for the partition by sale of certain real estate, the judge did not abuse his discretion in declining to impose an evidentiary sanction or in admitting certain reports in evidence. [23-24]

PETITION filed in the Barnstable Division of the Probate and Family Court Department on December 6, 2002.

The case was heard by *Robert E. Terry*, J.

*Stephen G. Howard* for the plaintiff.

*Duane P. Landreth* for the defendant.

RAPOZA, J. Janet K. Morgan appeals from an interlocutory decree of the Probate and Family Court ordering, pursuant to G. L. c. 241, § 10, the partition by sale of certain real property located in the town of Harwich (town) and held by Morgan and her sister, Carol K. Jozus, as tenants in common. We affirm.

*Background.* Morgan and Jozus inherited three parcels of real

property as described in the footnote[1] in equal shares through the will of their mother, Marie F. Kerruish, who died on March 27, 1986. The Old Wharf Road parcel, containing approximately 1.19 acres of land with a cottage situated thereon, is referred to as the "cottage parcel." The remaining parcels, collectively, are referred to as the "bog parcel."

Shortly after Kerruish's death, the executor of her estate, Ivor Jozus, who was also Jozus's husband, learned that the town was planning to increase minimum lot size and frontage requirements for buildable lots. Without notice to Morgan, the executor had a plan created dividing the cottage parcel into two lots, had the plan endorsed by the planning board as "approval not required" (ANR) under the subdivision control law pursuant to G. L. c. 41, § 81P, and recorded the plan with the registry of deeds. According to the executor, this was done on an "emergency" basis over the course of a few weeks in order to maximize the value of the property.[2] The executor further testified that he also had a plan created to divide the bog parcel into three lots and obtained an ANR endorsement so dividing the parcel, but his petition to register that plan in a separate action in the Land Court was dismissed on Morgan's motion.[3]

On December 6, 2002, Morgan filed in the Probate and Family Court a petition for partition seeking the partition and setoff of the parcels. A pretrial conference was conducted on July 23, 2003. Morgan filed a pretrial memorandum valuing the entire property at $547,800, derived from the 2003 tax assessments, but "adjusted" to treat the cottage parcel as one lot. In the pretrial memorandum, while Morgan expressed her primary desire to have the properties set off to her in return for payment of $273,900, she alternatively sought a private sale of the

---

[1]The parcels consist of (i) 12-16 Old Wharf Road; (ii) registered land as described in Barnstable County registry of deeds transfer certificate 121718 and bounded and generally described as "Lots B1, C and 2 Plan 10688-B"; and (iii) land off Deep Hole Road as described in Barnstable County registry of deeds book 2535, page 44, and book 1138, pages 43-44.

[2]There is evidence, however, that the executor began to explore the possibility of dividing the cottage parcel many months before obtaining the ANR endorsement of the cottage parcel.

[3]The division of this parcel is immaterial as Jozus's expert opined that no more than one lot could be created from the bog parcel because of wetlands and access issues.

properties for not less than $547,800. Jozus did not file a pretrial memorandum.

The judge issued an interlocutory decree dated July 23, 2003, appointing Anastasia Welsh Perrino as commissioner to partition the properties and "sell and convey . . . all . . . of said land — to set-off to petitioner, Janet K. Morgan, in exchange for her payment of $273,900.00 to Carol K. Jozus, or alternatively, that the land be sold — at private sale for not less than $547,800.00 dollars or at public auction for cash." After some delay, on December 29, 2003, a warrant issued to Perrino, ordering her, within six months, "to make sale and conveyance of the whole of said land at public auction — private sale — for the sum of $547,800.00 dollars, or for a larger sum, or set-off to Janet K. Morgan in exchange of her payment of $273,900.00 to Carol K. Jozus."

Morgan interpreted the interlocutory decree as providing her the choice of electing the setoff or the sale of the property, and she elected the setoff. Indeed, Morgan even tendered her payment of $273,900 to Perrino. Jozus and Perrino, on the other hand, interpreted the decree as allowing Perrino to elect to sell the property for the highest price, assuming it exceeded $547,800. Faced with these opposing interpretations, on January 5, 2004, Perrino filed a motion for instructions, accompanied by an affidavit, citing the dispute between the parties and commenting that her research revealed that the property was worth in excess of $1,000,000. Perrino requested that the court instruct her "to sell the property at public auction for the highest possible price," and declare that she is "not obligated to accept the price of $273,000.00 from . . . Morgan."

On January 8, 2004, the judge, sua sponte, vacated the July 23, 2003, interlocutory decree and appointment of Perrino. The judge found that the parties were entitled to an evidentiary hearing on the petition for partition and to determine the current fair market value of the subject properties.[4] A trial ensued, and the judge concluded that if each of the three parcels is buildable, they hold a value of $500,000 each. The judge issued an

---

[4]The judge noted that the parties had agreed that the property could not be advantageously divided. Compare *Delta Materials Corp.* v. *Bagdon*, 33 Mass. App. Ct. 333, 334 (1992).

interlocutory decree dated October 29, 2004, appointing Frank J. Shealey as commissioner "to take any and all reasonable actions to maximize the value of all three lots." The interlocutory decree further provided: "If all three lots are deemed buildable, then the Commissioner is to sell and convey the lots, individually or collectively, for a total price of not less than one million five hundred thousand dollars ($1,500,000.00). Otherwise, the Commissioner may petition the Court for further instructions." Morgan appeals.

1. *Order vacating the July 23, 2003, interlocutory decree.* There having been no appeal of the July 23, 2003, interlocutory decree, Morgan argues that the judge was without authority to vacate the decree. We disagree.

It is true that an interlocutory decree in a partition proceeding is final by its nature, constitutes a conclusive determination, and is subject to immediate appeal. *Asker* v. *Asker*, 8 Mass. App. Ct. 634, 637 (1979). The interlocutory decree at issue, however, was ambiguous in that it gave Perrino alternative directives without expressing a preference between them or a means for determining which option to pursue. We said in *Platts* v. *Wronski*, 15 Mass. App. Ct. 30, 34 (1982), that where a commissioner finds it impossible to comply with a warrant, the commissioner could "report[] that to the court . . . which, after appropriate proceedings, could determine whether to modify the original decree." Given the patent ambiguity in the interlocutory decree, Perrino was obligated to seek further instruction or modification of the order, as she did. See *Kauppila* v. *Kauppila*, 29 Mass. App. Ct. 995, 996 (1990). The fact that the opposing interpretations of the parties, rather than the absence of a buyer or other impediment to the partition by sale, made Perrino's task "impossible" does not render her motion any less appropriate.

While the judge's action is labeled sua sponte, it is apparent that the judge vacated the interlocutory decree after its ambiguity had been brought to his attention by Perrino. Faced with the patently ambiguous order, we have little doubt that the judge had the authority to clarify it. By vacating the interlocutory decree, the judge essentially answered the commissioner's petition by determining, we think appropriately, that sale at the

highest price was the proper result. Moreover, the judge was correct to afford the parties an evidentiary hearing on the issue of price.

Morgan makes a related argument that Perrino exceeded the scope of the warrant appointing her when she offered her opinion that the property was worth in excess of one million dollars, and that the judge erred in relying on it in deciding to vacate the interlocutory decree. Again, we disagree. In order to determine if there were any meaningful difference between the two options given in the interlocutory decree and warrant, some investigation into the actual market value of the property by Perrino was reasonable and necessary. Perrino's actions thus have no similarity to those of the commissioner in *Kauppila* v. *Kauppila, supra*, who unilaterally waived the court's minimum bid requirement at an auction of the partition property, or those of the commissioner in *Platts* v. *Wronski, supra* at 33, who decided to revisit the judge's finding that the land could not be advantageously divided. We perceive no error in Perrino offering the product of her research to the court or in the judge's presumed consideration of those results.

2. *The ANR plan.* Next, Morgan argues that it was error to consider the original cottage parcel as two separate lots because the executor of Kerruish's estate had no authority to effect an ANR division of the property. The division was accomplished in 1992, and although the judge found that Morgan filed an action in the Land Court seeking to set aside the division of the cottage parcel, in her reply brief presented to this court, Morgan denies that she filed such an action. Morgan takes the position, without citation to any authority, that she "has no obligation to 'undo' the fraudulent ANR division that was never legally done in the first instance."

Without expressly making a finding, the judge seems to have accepted the ANR division of the cottage parcel, considering that it appears valid on its face and has been recorded in the registry of deeds. In any event, only the Superior Court and Land Court, pursuant to G. L. c. 41, § 81BB, have authority to review approvals or disapprovals of an ANR endorsement, and Morgan has failed to seek relief in those courts. Morgan cites no authority for the proposition that the Probate and Family

Court in a partition proceeding has authority to disregard a recorded ANR plan. We, therefore, discern no error in the judge's consideration of the plan as valid.

3. *Stipulation of value.* Morgan next makes a rather disingenuous argument that a stipulation of value entered into by the parties should have resolved the issue of value. The trial transcript makes it quite clear that the parties agreed as to the value of the three lots *if* the cottage parcel's second lot and the bog parcel were unbuildable.[5] Much of the trial focused, therefore, on the issue whether the lots were, in fact, buildable. The stipulation did not resolve the issue of value, but may come into play if ultimately there is no buyer for the "buildable" price affixed by the judge.

4. *Evidence of value.* Valuation in a partition proceeding is based on "the highest price that a third party would pay for the land in a free and open market, . . . rather than the value of the property to the parties." *Delta Materials Corp.* v. *Bagdon*, 59 Mass. App. Ct. 439, 442 (2003) (*Delta III*). "There is no question that in arriving at the fair market value of the land the judge could properly consider the uses to which the property might be applied or to which it was reasonably adapted." *Delta Materials Corp.* v. *Bagdon*, 43 Mass. App. Ct. 307, 309 (1997) (*Delta II*). Morgan argues, however, that it was error to allow Jozus's expert to testify as to the value of the second lot of the cottage parcel and the bog parcel as buildable because whether they are buildable is speculative and hypothetical.[6] Jozus counters by arguing that the lots are indeed buildable, relying on the judge's review of the zoning bylaw.

Although the relevant zoning bylaws were admitted as exhibits ten and eleven at trial, the parties have not included them in the record on appeal. Nor are the applicable wetland regulations in the record. We cannot say, therefore, that the judge's conclusion that the lots may be buildable is error.

---

[5]The parties stipulated that the cottage parcel lot that contains the cottage is worth $535,000 and that the second lot of the parcel as established in the ANR plan, if unbuildable, is worth $20,000. The stipulated value of the bog parcel, if unbuildable, is $110,000.

[6]Jozus's expert testified that, if buildable, the second lot of the cottage parcel is worth $525,000 and the bog parcel is worth $580,000.

We do note, however, that the speculative nature of building on the cottage parcel's second lot is not readily apparent on the record presented, as the evidence shows that (1) it has been assessed as a buildable lot since the ANR endorsement, and (2) it has been common practice to allow these lots to be built upon. Compare *Skyline Homes, Inc.* v. *Commonwealth*, 362 Mass. 684, 687-688 (1972). Jozus concedes that development of at least the bog parcel will have some impediments, requiring conservation commission approval due to the pervasive wetlands, a building permit, approval by the board of health of a septic system in proximity to wetlands, and, potentially, a special permit, all of which contribute to narrow the gap between speculative uses and admissible realistic potential uses. The judge has a margin of ultimate discretion in deciding whether a use is unduly speculative or conjectural. See *id.* at 686-687; *Delta III, supra* at 443. Moreover, unlike an eminent domain taking where the fact finder must determine the fair market value of the property as the measure of damages to the property owner, here the judge, having determined that partition by sale is appropriate, has the additional safeguard of the actual sale of the property. If there is no market for the properties as buildable lots, the commissioner has been instructed to return to the judge for further instructions. We cannot say, therefore, that the judge erred by ordering the commissioner essentially to test out the market for an actual sale of the parcels as buildable lots.

5. *Improper delegation of discretion.* Morgan argues that the judge improperly conferred his discretion on the commissioner to determine the terms and conditions of the statutory partition by ordering the commissioner to "take any and all reasonable actions to maximize the value of all three lots." Again, we disagree. The judge determined that the partition would be by sale and set minimum values for all three lots with instruction to report back to the court if a sale at the minimum price could not be accomplished. Morgan's contention that the judge abdicated his duties is unfounded. Morgan cites no authority for the proposition that, in circumstances such as these, a judge may not properly leave the details of the sale to the commissioner.

6. *Evidentiary rulings.* Morgan argues that Jozus's failure to

provide adequate answers to interrogatories, failure to supplement her answers to interrogatories, and failure to respond to Morgan's expert interrogatory until one business day before trial and further supplementing that answer on the day of trial, should have resulted in sanctions prohibiting Jozus from offering any evidence at trial, particularly expert testimony. The judge offered Morgan additional time to prepare for Jozus's expert witness, which Morgan apparently declined. A judge enjoys broad discretion in imposing sanctions, and the abuse of discretion standard applies to a judge's finding whether a sanction needs to be imposed. *Mattoon* v. *Pittsfield,* 56 Mass. App. Ct. 124, 131-132 (2002). While a judge, in the exercise of discretion, may exclude expert testimony for failure to comply with discovery, the judge must consider other options, including a sua sponte continuance of the trial. *Id.* at 133. While Morgan claims generally that her trial preparation was impaired by inadequate discovery responses, she makes no specific claim of prejudice. There has been no showing that the judge abused his discretion in declining to impose the sanction of prohibiting Jozus's expert from testifying.

Finally, Morgan argues that admission in evidence of the appraisal reports of Jozus's expert should not have been allowed because they constitute hearsay and contain double hearsay. Morgan's brief fails to identify the double hearsay statements contained in the reports. Contrary to Morgan's contention, the opinions of Jozus's expert contained in the appraisal reports as to whether the parcels are buildable are consistent with the expert's trial testimony. The reports, therefore, are merely cumulative of the expert's trial testimony, and their admission, if error, does not require reversal. See *Doyle* v. *Dong*, 412 Mass. 682, 689 (1992); *Foreign Car Center, Inc.* v. *Salem Suede, Inc.*, 40 Mass. App. Ct. 15, 23 (1996).

*Conclusion.* For the foregoing reasons, the interlocutory decree of the Probate and Family Court ordering the partition by sale of the real estate in issue is affirmed.

*So ordered.*