Curran, Dennis J., J.
Introduction
This case arises out of actions taken by the defendants to sell certain property in accordance with a Probate Court Order. On June 18, 2010, the plaintiff Kenneth Carlson, acting individually and as the executor of his father’s estate, brought suit against attorneys William Mayer and Megan Thorp, and real estate broker Robert Harrington. Carlson alleges that a buyer was procured to purchase certain real estate in Carlson’s father’s name and that the defendants’ failure to use their best efforts to timely obtain environ *4 mental test results on the property caused the agreement to fall through and the transaction to fail, giving rise to Carlson’s present claim for damages.
The case is before the court on a motion for summary judgment brought by the remaining defendants, Mayer and Thorp, under Mass.R.Civ.P. 56.[1] Mayer and Thorp argue that, as a matter of law, neither defendant can be found liable because they benefit from quasi-judicial immunity and are absolutely immune to Carlson’s claims. Carlson opposes the motion, claiming that immunity does not apply to the defendants.
For the reasons that follow, the defendants’ motion for summary judgment is DENIED.
BACKGROUND
The summary judgment record and matters of public record of which the court takes judicial notice set forth the following facts, taken in the light most favorable to the non-moving party, Carlson.
Carlson is the executor and beneficiary of the estate of his deceased father, Herbert H. Carlson. The Worcester Probate Court appointed Mayer to partition by sale part of the estate’s property at 100 Fremont Street, Worcester, Massachusetts. The date of the appointment is in dispute. Thorp worked, at all relevant times, as an associate attorney for Mayer.
In August 2009, James Vartanian signed a purchase and sale agreement (“P&S”) to buy the property. Under the agreement, Vartanian paid a deposit consisting of the entire purchase price of $120,000.00, which Mayer held. The P&S contained a “Conditions” provision under which Vartanian’s obligations were contingent, including the completion of environmental testing at the buyer’s own volition and expense. Environmental testing was not timely conducted, the underlying reasons for which are in dispute.[2] Vartanian made the decision not to purchase the subject property.[3] Mayer and Thorp then returned the $120,000.00 deposit to Vartanian without a court order or instruction from the Worcester Probate Court.
Carlson now seeks to recover damages from Mayer and Thorp.
DISCUSSION
I. Introduction
Under the established standard, summary judgment will be granted where, viewing the evidence in the light most favorable to the non-moving party, all material facts have been established, and the moving party is entitled to judgment as a matter of law. Cabot Corp. v. AVXCorp., 448 Mass. 629, 636-37 (2007). The moving party must establish that there are no genuine issues of material fact, and that the nonmoving party has no reasonable expectation of proving an essential element of its case. Miller v. Mooney, 431 Mass. 57, 60 (2000). When the moving party does not bear the burden of proof at trial, it is entitled to summary judgment either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case. Kourouvacilis v. General Motors, 410 Mass. 706, 716 (1991).
Mayer and Thorp seek summary judgment on all counts against them. Specifically, the defendants argue that Mayer, as court-appointed partition commissioner, and Thorp, as Mayer’s associate, are entitled to quasi-judicial immunity and are absolutely immune from suit because Carlson’s claims arise under the defendants’ attempted sale of the property. Carlson does not dispute that the Probate Court appointed Mayer to sell the property; rather, Carlson asserts that there is a dispute concerning the adequacy of the defendants’ conduct as well as a dispute over the nature of the relationship between the defendants and Carlson. Carlson’s allegations regarding the adequacy of Mayer and Thorp’s performance during the attempted partition sale go to the underlying merits of the plaintiffs negligence, breach of contract, and breach of fiduciary duty claims, and not to the issue of whether the defendants are entitled to immunity. Thus, these disputes are not genuine issues of material fact for the purposes of this summary judgment motion. Because it is undisputed that Mayer was appointed by the Worcester Probate Court to sell the property, the issue before the court is whether, as a matter of law, a partition commissioner appointed by the court to conduct a court ordered partition sale is entitled to absolute quasi-judicial immunity for damages claims arising out of an attempted sale of the subject properly.
The court preliminarily addresses three evidentiary matters raised by the parties and the summary judgment record: (1) Carlson’s objections to exhibits I and 3; (2) Mayer and Thorp’s motion to strike plaintiff Kenneth H. Carlson’s affidavit; and (3) a discrepancy inherent in the record as to when Mayer was appointed Commissioner.
II. PRELIMINARY EVIDENTIARY MATTERS
1. Plaintiffs Objection to Exhibits 1 and 3 in Joint Appendix of Summary Judgment Exhibits
Carlson objected to exhibits 1 (Order of Appointment) and 3 (Warrant) contained in the Joint Appendix. Specifically, he argues that the exhibits are not admissible in evidence, and therefore are not admissible in support of the defendants’ motion for summary judgment under Mass.R.Civ.P. 56(e). Rule 56(e) expressly requires that “supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.” Mass.R.Civ.P. 56(e) (emphasis added). However, Rule 56(e) governs neither exhibit because neither the Joint Appendix nor exhibits 1 and 3 are an affidavit or a document attached to an affidavit. Rather, the court’s evaluation is governed by Rule 56(c): Motions and *5 Proceedings Thereon.[4] The defendants, as the moving parties, have “the burden under rule 56(c) to show by credible evidence from [their] affidavits and other supporting materials that there is no genuine issue of material fact and that [they are] entitled, as matter of law, to a judgment.” Smith v. Masimiano, 414 Mass. 81, 85 (1993) (citations omitted). This “credible evidence” standard has similarly been adopted by the Superior Court. See, e.g., Limoncelli v. Grover, 2010 WL 3038900, at *2 (Mass.Super. 2010) (Rufo, J.) [27 Mass. L. Rptr. 195]; Zwidra v. Mazurek, 2009 WL 3593498, at*1 (Mass.Super. 2009) (Troy, J.) [26 Mass. L. Rptr. 222].
The court is inclined to find exhibits 1 and 3 credible. To the extent that exhibits submitted by parties to support or oppose a motion for summary judgment must provide “evidence sufficient to support a finding that the matter in question is what its proponent claims,” Massachusetts Guide to Evidence Section 901 establishes the requirement of authentication or identification. Mass.G.Evid. §901(a)(b) (2011). Though unsigned, the nature of exhibits 1 and 3 is such that, unless they are forgeries, which seems highly unlikely, authentication would be a relatively simple matter of requesting and obtaining certifications from the issuing entities or other record keepers. See Mass.G.Evid. §901(b)(7) (2011) (authentication by public records or reports); Mass.G.Evid. §901(b)(10) (2011) (authentication by methods provided by statute); G.L.c. 233, §79E (regarding reproductions of public or business records). Moreover, both exhibits appear to have been issued by the Probate Court in the underlying proceeding and the court may take judicial notice of docket entries in a prior related proceeding. See Mass.G.Evid. §201(b)(2) (2011); Jarosz, 436 Mass. at 530; In re Zita, 455 Mass. 272, 282 (2009). To remove these materials from the summary judgment record would necessarily result in rejection of the claim without evaluation of the sufficiency of the materials. That would seem to elevate form over substance. The court will assume, for present purposes, that the materials would be properly authenticated at trial, and will evaluate them on the basis.
2. Defendants’ Motion to Strike Plaintiffs Affidavit
The defendants move, under Superior Court Rule 9(A)(b)(4) and Mass.R.Civ.P. 56(e), to strike the affidavit of Kenneth Carlson on grounds that “the bulk of the assertions contained therein” is not based on personal knowledge, fails to set forth facts as would be admissible in evidence, fails to show that the affiant is competent to testify as to matters stated therein, and consists of conclusoiy assertions of fact, statements as to ultimate fact and conclusions of law, and improper legal argument.
Evidence derived from affidavits made on the basis of personal knowledge is the proper form to comprise a record for summary judgment. Gurry v. Cumberland Farms, Inc., 406 Mass. 615, 623 n.5 (1990). “Conclusoiy statements, general denials, and factual allegations not based on personal knowledge are insufficient to avoid summary judgment.” Davidson v. General Motors Corp., 57 Mass.App.Ct. 637 (2003) (internal citation omitted). Furthermore, allegations made on “information and belief’ need not be given weight on motion for summary judgment, Jackson v. Hogan, 388 Mass. 376 (1983), and it is also not the function of an affidavit “to bring a legal argument before the trial court . . . That is the function of a memorandum of law.” Bangaard v. Miller, 55 Mass.App.Ct. 51, 54, n.6 (2002) (quoting Lewis v. Antelman, 10 Mass.App.Ct. 221, 227 (1980)).
The First Circuit’s holding that the personal knowledge requirement prevents a witness from testifying to what he “could not have actually perceived or observed” informs the instant case. United States v. Rodriguez, 162 F.3d 135, 144(1st Cir. 1998).[5] Carlson neither perceivéd nor observed that which he asserts at paragraphs four, seven, eight, nine, ten, eleven, twelve, thirteen, fifteen, sixteen, and seventeen of his affidavit. Thus, these paragraphs must be stricken from the summary judgment record in violation of the personal knowledge requirement of Mass.R.Civ.P. 56(e). In addition, Carlson’s assertions at paragraphs ten, eleven, twelve, thirteen, fourteen, fifteen, eighteen, and nineteen contain conclusoiy statements as to the defendants’ legal responsibilities and conclusory interpretations of the terms of the purchase and sale agreement. As improper legal arguments, these assertions must be stricken from the summary judgment record.
3. Discrepancy in the Record
Though it is undisputed that Mayer was appointed by the Worcester Probate Court to sell the properly, there is a discrepancy in the record as to when Mayer was appointed. In setting out the facts, the court must resolve any conflicts in the summary judgment materials and make all logically permissible inferences in the plaintiffs favor. Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202 (1991).
The defendants Mayer and Thorp assert that Mayer was appointed by the Worcester Probate Court on or about March 25, 2010, to partition the land at 100 Fremont Street, Worcester, Massachusetts. In contrast, plaintiff Carlson asserts that the Worcester Probate Court appointed Mr. Mayer on or about May 23, 2007 to sell certain property owned by the estate, including the property located at 100 Fremont Street. Notably, Mayer admits these veiy assertions by Carlson in “Defendant’s Response to Plaintiffs Request for Admission” signed by Mayer on September 9, 2011 and filed with the court on October 4, 2011.
The date on which Mayer was appointed to sell the property is a material fact “that might affect the outcome of the suit under the applicable law.” Mulvihill v. The Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). *6 It is undisputed, for the purposes of the instant motion for summary judgment, that Vartanian signed the purchase and sale agreement to buy the property in August 2009. It is also undisputed that the purchase and sale agreement governing the attempted sale, signed by both Vartanian and Mayer, is dated August 25, 2009. Thus, if the Worcester Probate Court appointed Mayer to sell the property in March 2010, actions taken in furtherance of a sale contracted for in August 2009 would not necessarily be taken under the court’s appointment.
The Worcester Probate Court record,[6] through which the underlying court appointment arose, contains numerous court orders issued before March 25, 2010 that refer to and address William Mayer as Commissioner in relation to the property at 100 Fremont Street, Worcester, Massachusetts. See Motion To Extend Warrants, filed July 6, 2009 (Motion Allowed July 10, 2009); Bond of Commissioner, filed May 13, 2008 (examined and approved by the Court on May 13, 2008); Further Judgment of Contempt, filed August 20, 2009 (ordered December 15, 2009). The evidentiaiy inference to be drawn from these court orders is that the Probate Court appointed Mayer as Commissioner for the property before March 25, 2010, despite Mayer’s assertion. Additionally, the Probate Court’s July 10, 2009 order allowing a Motion To Extend Warrants for, among others, the property located at 100 Fremont Street, Worcester, Massachusetts, because “said warrants have expired and the properties have not been sold” leads this court to draw the evidentiaiy inference that a warrant prescribing Mayer’s duties as Commissioner of the property was effective as of, and before, July 10, 2009. These evidentiaiy inferences are also favorable to the plaintiffs assertion that Mayer was appointed in 2007.
Thus, relying upon the inference that Mayer’s appointment as Commissioner was made before the alleged misconduct, the court proceeds with its analysis of the applicable law governing absolute immunity.
III. ISSUE OF LAW: EXTENSION OF ABSOLUTE IMMUNITY
Judicial immunity “insulates the judge from liability for acts committed in the exercise of his jurisdiction.” Temple v. Marlborough Div. of Dist Court Dept., 395 Mass. 117, 129 (1985). The doctrine of absolute judicial immunity has been extended to persons, other than judges, performing judicial or quasi-judicial functions. LaLonde v. Eissner, 405 Mass. 207, 210 (1989). The Supreme Judicial Court has opined that “courts have expanded the doctrine of absolute judicial immunity to include [] quasi judicial officers because they are involved in an integral part of the judicial process and thus must be able to act freely without the threat of a law suit." Id., at 211; Commonwealth v. O’Neil, 418 Mass. 760, 767 (1994). See also, Comins v. Sharkansky, 38 Mass.App.Ct. 37, 39 (1995).[7] “Once a court finds that non-judicial persons fulfill quasi-judicial functions intimately related to the judicial process” these persons “have absolute immunity for damage claims arising from their performance of the delegated functions.” LaLonde, 405 Mass. at 212, n.8 (internal citation omitted). Conversely, absolute immunity fails to attach when such persons perform acts that are clearly outside the scope of their jurisdiction. Cok v. Cosentino, 876 F.2d 1, 3 (1st Cir. 1989).
The question is whether partition commissioners in Massachusetts are non-judicial persons who fulfill quasi-judicial functions intimately related to the judicial process. If so, the court must determine whether Carlson’s damages claims arise from partition commissioner Mayer’s performance of delegated functions in satisfaction of the standard set forth in LaLonde, supra.
1. Non-judicial Officers Who Fulfill Quasi-Judicial Functions
Massachusetts courts have not spoken on whether partition commissioners are non-judicial persons who fulfill quasi-judicial functions intimately related to the judicial process and, thus, the issue is one of first impression for the court. Because Massachusetts law is silent on this matter, the court looks to extra-jurisdictional precedent, and the First Circuit’s functional analysis approach in particular, for guidance in determining the availability of absolute quasi-judicial immunity to non-judicial officers. See, e.g., Cok, 876 F.2d at 3 (guardian ad litem and conservator of assets); Bettencourt v. Bd. of Regist. in Med., 904 F.2d 772, 782-83 (1st Cir. 1990) (state medical board members and staff); Coggeshall v. Massachusetts Bd. of Registration of Psychologists, 604 F.3d 658, 663 (1st Cir. 2010) (members of state board of registration of psychologists).[8] See, generally, Lajoie v. Commonwealth, 2000 WL 1023723 (Mass.Super., 2000) (Toomey, J.) [1] Mass. L. Rptr. 739] (“Given the absence of any direct guidance in Massachusetts on the underlying issue, this court looks to extra-jurisdictional precedent”). This “functional approach taken in immunity cases [. . .] requires an analysis of the nature of the duties performed and whether they are ‘closely associated with the judicial process.’ ” Cok, 876 F.2d at 3, citing Cleavinger v. Saxner, 474 U.S. 193, 200 (1985).
Cok v. Cosentino, supra, provides guidance as to the application of a functional analysis to partition commissioners. There, the First Circuit employed such an analysis to determine that a conservator of assets was involved in the adjudicative process and shared in the family court judge’s absolute immunity. Id. In analyzing the conservator’s functions, the First Circuit noted that a conservator or commissioner generally manages the properties and pays the bills for work done and that “here, the conservator also sold certain marital real estate.” Id. The performance of these functions was found to aid and inform the family court under *7 the direction of the family court. Id. The jurisdiction of the family court conceded, the First Circuit held that the conservator of assets was a “nonjudicial person!) fulfilling quasi-judicial functions.” id.[9] Upon determining that the conservator of assets functioned as an agent of the court, the First Circuit concluded that the conservator had “absolute quasi-judicial immunity for those activities integrally related to the judicial process.” Id.
Of particular significance to the instant case is the authority cited by the First Circuit to substantiate its conclusion that a conservator of assets was a non-judicial person fulfilling quasi-judicial functions; namely, the First Circuit’s reliance on the Seventh Circuit’s holding in Ashbrook v. Hoffman that appointed partition sale commissioners are “an arm of the court and an integral part of the judicial process.” 617 F.2d 474, 477 (7th Cir. 1980); Cok, 876 F.2d at 3. In so relying, the First Circuit identified the functions of partition commissioners as analogous to those of conservators of assets. This recognized similarity in function by the First Circuit serves to further justify applying the Seventh Circuit’s characterization of partition commissioners to the instant case.
In Ashbrook, the Seventh Circuit reasoned:
An analysis of a partition commissioner’s official duties leads us to the conclusion that they are sufficiently related to the judicial process to entitle them to quasi-judicial absolute immunity for their official acts. A partition proceeding is in the nature of ajudicial proceeding; it begins with a complaint and results in a judicial decree of partition. Commissioners are appointed by a court, their duties are defined by statute, and the court reviews their conduct. The commissioners make a judgment whether the lands for which partition is sought may be divided without damage to the owners. The commissioners prepare a report of partition which is read in open court and, if confirmed by the court, is entered in the record book. The partition commissioners, under the supervision of the court, exercise discretion in the conduct of quasi-judicial proceedings. The commissioners serve as instruments or arms of the court leading to the issuance of ajudicial decree of partition. In total these factors suggest an integral relationship with the judicial process entitling partition commissioners to absolute quasi-judicial immunity for acts in furtherance of their official duties. The policies behind the extension of quasi-judicial absolute immunity suggest that the commissioners are absolutely immune. The presence of appeal to correct the commissioners’ errors further suggest that quasi-judicial immunity exists.
617 F.2d at 477 (internal references omitted).
Partition proceedings in Massachusetts may be similarly characterized. A partition proceeding in Massachusetts is in the nature of ajudicial proceeding; a probate judge’s decree ordering the partition of real estate held by parties as tenants-in-common is a final judgment, Asker v. Asker, 8 Mass.App.Ct. 634 (1979); partition commissioners are appointed by the court; and their duties are determined by statute and orders ofthecourt, G.L.c. 241, §§10, 12.[10] See also, Commonwealth v. O’Connell, 274 Mass. 315, 321 (1931) (appointed commissioner’s “duty is to obey the order of the Probate Court in making the partition”); Kauppila v. Kauppila, 29 Mass.App.Ct. 995 (1990). Likewise, in Massachusetts, partition commissioners are required to report to the court, and the court must review the submitted return before the partition is finalized. See G.L.c. 241, §16.[11] During the final decree stage of a partition proceeding, questions may be addressed as to “whether the actions of the commissioners have been tainted by irregularity and whether the commissioners have divided the locus according to the requirements of the interlocutory decree.” Asker, 8 Mass.App.Ct. at 634. Finally, partition commissioners in Massachusetts are compensated like “officers” of the court as their charges are determined by the court and provided for by statute. Grantham v. O’Riorden, 244 Mass. 472 (1923); Howe v. Tarvezian, 73 Mass.App.Ct. 10 (2008); G.L.c. 241, §22.
Notably, the Seventh Circuit’s analysis in Ashbrook is distinguishable in one significant respect. There, the Court highlighted the partition commissioner’s statutory function of making a judgment as to whether land may be divided without damage to the owners. By contrast, in Massachusetts, it is not the commissioner’s duty to decide how to make a partition; rather, the court makes this determination and subsequently appoints a disinterested commissioner and issues a warrant prescribing the commissioner’s duties as to division or sale. See Clough v. Cromwell 250 Mass. 324 (1924); Platts v. Wronski, 15 Mass.App.Ct. 20, 33 (1982); G.L.c. 241, §12. Nevertheless, the fact that partition commissioners in Massachusetts do not determine how to make partition is not fatal to the court’s analysis in the instant case as the First Circuit has previously characterized the function of selling real estate as a quasi-judicial function in the context of a court appointed conservator of assets. See Cok, 876 F.2d at 3.
Thus, the court finds that partition commissioners are non-judicial officers fulfilling quasi-judicial functions in light of the fact that partition commissioners in Massachusetts are appointed by the court and subject to the court’s rules; their duties are statutorily prescribed; and their conduct is in aid of the court and an integral part of the judicial process with respect to partition proceedings.
Under the Supreme Judicial Court’s decision in LaLonde, the court will next analyze whether Carlson’s damages claims arise from Commissioner Mayer’s performance of delegated functions.
*8 2. Claims Arising from the Performance of Delegated Functions
The parties do not dispute that Carlson’s claims all arise out of the conduct of Mayer and Thorp concerning the attempted partition sale of the property at 100 Fremont Street, Worcester, Massachusetts. See, generally, Superior Court Rule 9(A)(b)(5) (“For purposes of summary judgment, the moving parly’s statement of a material fact shall be deemed to have been admitted unless controverted as set forth in this paragraph”). To the extent that Carlson’s claims against Mayer and Thorp, as set forth in the amended complaint, arise out of the defendants’ alleged failure to use due care in selling the property, to insure that the sale was completed, and to act properly with regard to environmental testing, the court recognizes that such conduct is in furtherance of the attempted partition sale. However, Carlson’s claims arise in large part from, and a significant portion of Carlson’s opposition motion is devoted to, an alleged mishandling of the $120,000.00 deposit. Mayer’s act of returning the $120,000.00 deposit to Vartanian was not conducted in furtherance of an attempted sale of the property, but rather on account of the sale’s veiy failure to close. Thus, the issue before the court is whether the act of returning a deposit in the course of a non-sale is a delegated function.
A partition commissioner’s duties are prescribed in the court-issued warrant. See Clough v. Cromwell, 250 Mass. 324 (1924); Platts v. Wronski, 15 Mass.App.Ct. 30, 33 (1982). However, the warrant contained in the summary record at Exhibit 3 is dated March 25, 2010 and, thus, there is a genuine issue of material fact as to whether the language in this warrant was active at the time Mayer returned the $120,000.00 deposit to Vartanian. Absent a clearly applicable warrant prescribing the duties in effect at the time of the alleged misconduct, this court cannot find as a matter of law that Mayer’s conduct, including the act of returning the deposit in the course of anon-sale, was a delegated function protected by absolute quasi-judicial immunity.
In light of the genuine issues of material fact remaining as to Commissioner Mayer’s delegated functions, defendants Mayer and Thorp are not entitled to judgment as a matter of law. Summary judgment is, therefore, denied.
Even proceeding upon the duties prescribed in the warrant at exhibit 3, summary judgment must be denied. This warrant orders the commissioner to sell and convey the properly. Specifically, the warrant governs the time frame under which the sale must occur, advertisement of the sale, distribution and payment of the sale proceeds, and the required presentation to the probate court after the sale. In total, the warrant governs the sale of the property; it does not govern circumstances of non-sale. While Mayer’s conduct related to a quasi-judicial partition proceeding, actions taken by Mayer pursuant to the non-sale of the property do not constitute acts in furtherance of the commissioner’s official duties to make the sale. Such activity, taken upon Mayer’s own initiative without sanction of the court, is not conduct for which Commissioner Mayer is absolutely immune. See Pierson v. Ray, 386 U.S. 547, 554 (1967) (“Conceptually, if a court-appointed officer engaged in activities which the order of appointment neither authorized nor sanctioned, the officer would not be immune from liability, for the same reason that a judge is not immune for acts taken in the total absence of jurisdiction”).
The First and Seventh Circuits’ analyses, in Cok and Ashbrook respectively, is consistent with this reasoning. In Cok, the plaintiffs claims — that the conservator of assets wasted and devalued her properties, and then sold them to insiders at favorable prices, without proper bidding and advertising — arose out of the conservator’s sale of real estate. 876 F.2d at 2. Having determined that the conservator possessed quasi-judicial immunity, the First Circuit held that the pleadings failed to show the conservator’s actions were taken in clear and complete absence of authority where “there [were] no allegations of theft or personal profiteering, or that any of their acts were taken without the sanction of the family court.” Id., at 4 (emphasis added). Similarly, in Ashbrook, the plaintiffs claims arose out of the partition commissioners’ conduct in handling a sale and distributing proceeds of a sale. 617 F.2d at 474. There, the Seventh Circuit found that “advertisement of a partition sale is a routine part of the conduct of such a sale. Any inadequacy in the advertisement is reviewable on appeal but will not subject the commissioners to a federal civil damages suit. Likewise, complaints concerning the disposal of the proceeds of sale where it is not alleged that the proceeds were misappropriated, improper participation in the bidding process, and an alleged unlawful cover-up of wrongdoing in the sale, all relate to the conduct of the quasi-judicial partition proceeding and are activities for which the commissioners are absolutely immune.” Id., at 477. Cf. Kermit Construction v. Banco Credito Y Ahorro Ponceno, 547 F.2d 1 (1st Cir. 1976) (state receiver who carried out orders of appointing judge entitled to absolute immunity); LaLonde, 405 Mass. at 210-11 (“When acting at a judge’s direction, ‘quasi judicial’ officers enjoy the same absolute immunity for their conduct”); Andersen v. Bishop, 304 Mass. 396, 400 (1939) (prosecutor immune from suit involving conduct “in discharge of. . . official duties”); Temple, 395 Mass. at 133. By contrast, in the instant case, the act of returning the $120,000 deposit arose out of a non-sale and the plaintiff asserts that this act was taken without sanction of the probate court.
The Appeals Court’s finding in Morgan v. Jozus is also consistent with this reasoning. 67 Mass.App.Ct. 17 (2006). In Morgan, the probate judge ordered a commissioner to “take any and all reasonable actions to maximize the value of all three lots” with instruction *9 to report back to the court if a sale could not be accomplished at the minimum price. The Appeals Court held that the plaintiffs contention — that the judge improperly abdicated his duties by conferring his discretion on the commissioner to determine the terms and conditions of the statutory partition — was unfounded, noting that the plaintiff “cite[d] no authority for the proposition that, in circumstances such as these, a judge may not properly leave the details of the sale to the commissioner.” Id., at 23. In contrast to the instant case, the partition commissioner in Morgan was specifically granted discretion to determine the terms and conditions of the partition and tasked to report back-to the judge if a sale could not be accomplished. See also, Kauppila, 29 Mass.App.Ct. at 995 (commissioner has no authority to change the conditions of the sale without court approval).
Finally, public policy considerations recognized by courts assessing immunity are not served by extending immunity in these circumstances given the absence of alternative mechanisms to prevent commissioner misconduct: namely, the absence of safeguards and appellate review with regard to failed sales. For example, in granting absolute quasi-judicial immunity to court-appointed partition commissioners for their actions in conducting a partition sale, the Seventh Circuit emphasized “(t]he presence of appeal to correct the commissioner’s errors . . .” Ashbrook, 617 F.2d at 477. However, the procedural safeguards present in Ashbrook and other cases are lacking in this case. As commissioner, Mayer was purportedly prescribed by warrant to report to the Court within one month after the date of sale. See exhibit 3; G.L.c. 241, §12. By statute, the court “may then, after hearing, accept and confirm the return of the commissioners, or set it aside and commit the case anew to the same or to other commissioners having the same powers as those originally appointed.” G.L.c. 241, §16. There is no indication that Mayer’s act of returning the $120,000.00 deposit pursuant to a non-sale was similarly opened to the adversarial process, reviewed by the probate court, made part of the official court record, or subject to appeal. Cf. T&W Inv. Co. v. Kurtz, 588 F.2d 801, 802 (10th Cir. 1978) (finding quasi-judicial immunity appropriate for court-appointed receiver where “every action by [the receiver] objected to in this suit was known to and approved by the state court judge supervising the receiver,” the plaintiff “had an opportunity to and did object throughout the state court proceedings,” and “the receiver was in fact following the orders of the court and complying therewith”). The First Circuit has proclaimed that “[officials who seek absolute immunity must squarely shoulder the burden of showing that public policy demands an exemption of that scope.” Bettencourt, 904 F.2d at 784 n.15, quoting Manion v. Michigan Bd. of Medicine, 765 F.2d 590, 596 (6th Cir. 1985)). No such showing has been made.
Thus, the court cannot find, as a matter of law, that Mayer and Thorp are protected by absolute immunity for claims arising out of the act of returning the $120,000.00 deposit to Vartanian in the course of a non-sale. The defendants Mayer and Thorp are not entitled to judgment as a matter of law.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ William Mayer and Megan Thorp motion for summary judgment is DENIED.

 On August 17, 2011, this court granted a motion to dismiss all claims asserted against the defendant Harrington.

 Carlson claims that Vartanian failed to conduct environmental testing within the terms specified under the purchase and sale agreement. Mayer claims that the failure to conduct environmental testing was due to interference on the part of Carlson.

 In an affidavit, contained in the underlying Probate Court records, dated February 10, 2010, Vartanian stated that “[d]ue to the numerous delays caused by Mr. Carlson’s refusal to provide access to the property and refusal to vacate the property in a timely fashion, I have made the decision not to purchase 100 Fremont Street, Worcester, MA. See Docket #06E 0113 PPI. See also, Jarosz v. Palmer, 436 Mass. 526, 530 (2002) (“[A] judge may take judicial notice of the court’s records in a related action”); Hutchinson v. Emmerton, 2006 WL 141671 (Mass.Land.Ct. 2006) (Lombardi, J.).

 Mass.R.Civ.P. 56(c) provides, in part, that: “The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and responses to requests for admission under Rule 36, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.”

 See also, United States v. Neal, 36 F.3d 1190, 1206 (1st Cir. 1994) (Evidence is inadmissible under the personal knowledge requirement of F.R.E. 602 “only if in the proper exercise of the trial court’s discretion it finds that the witness could not have actually perceived or observed that which he testified to”) (internal citation omitted); Massachusetts Guide to Evidence, Section 602, note (2011) (Massachusetts Rule of Evidence Section 602, entitled ‘Lack of Personal Knowledge,’ is “taken nearly verbatim from Fed.R.Evid. 602”).

 Docket No. 06E0113PPI.

 See also, Briscoe v. LaHue, 460 U.S. 325, 334-35 (1983) (“the common law provided absolute immunity from subsequent damages liability for all persons — governmental or otherwise — who were integral parts of the judicial process”); Mitchell v. Fishbein, 377 F.3d 157, 174 (2d Cir. 2004) (Under the doctrine of quasi-judicial absolute immunity, “a private actor may be afforded the absolute immunity ordinarily accorded judges acting within the scope of their jurisdiction if the private actor’s role is functionally comparable to that of a judge or if the private actor’s acts are integrally related to an ongoing judicial proceeding”); Ashbrook v. Hoffman, 617 F.2d 474, 476 (7th Cir. 1980) (“If ‘acts, alleged to (be) wrongful, were committed by the officer in the performance of an integral part of the judicial process’ then the officer is absolutely immune from suit,” citing Robichaud v. Ronan, 351 F.2d 533, 536 (9th Cir. 1965)).

 The Supreme Court has upheld application of the functional approach to Immunity law. See Briscoe v. LaHue, 460 U.S. 325, 342 (1983); Cleavinger v. Saxner, 474 U.S. 193, 202 (1985).

 See also, Mitchell v. Fishbein, 377 F.3d 157, 174 (2d Cir. 2004) (“In order to be entitled to absolute immunily under *10 this test [that the official’s decisions are ’integrally related’ to a judicial proceeding], the official must be engaged in acts that are integrally related not simply to the judicial process in general but to a concrete judicial case or controversy”); Demoran v. Witt, 781 F.2d 155, 157 (9th Cir. 1986) (reasoning that probation officers serve a function integral to the judicial process when they prepare pre-sentence reports for a judge because they “act as an arm of the sentencing judge” in that capacity in light of the judge’s request that they perform the function, the statutory authority for this delegation of duty, and the judge’s use of the report in performing judicial duties).

 G.L.c. 241, §10 states, in relevant part; “If it is found that the petitioner is entitled to have partition for the share claimed or for any less share, the court shall make the interlocutory decree that partition be made, and therein determine the persons to whom and the proportions in which the shares shall be set off.” G.L.c. 241, § 12 states: “If the court determines the petitioner entitled to partition, it shall thereupon appoint one or more disinterested commissioners and issue a warrant to them to make partition. The commissioners, before entering upon their duties, shall be sworn to execute the warrant faithfully and impartially, and a certificate of the oath shall be made on the warrant by the person administering it. They shall give at least seven days’ notice of the time and place appointed for making the partition, either personally or by registered mail, to all known persons interested therein, and shall make and sign a report of their doings and return it with their warrant.”

 G.L.c. 241, §16 states, in relevant part: “The court may after hearing accept and confirm the return of the commissioners, or set it aside and commit the case anew to the same or to other commissioners having the same powers as those originally appointed; or it may, after a hearing, amend the return, and accept and confirm it as amended. After the return of the commissioners has been accepted and confirmed, the court shall thereupon enter a decree that the partition be firm and effectual forever.”