The parties own two noncontiguous parcels in Arlington as tenants in common. The petitioner, Camillo Leombruno, sought partition. A Probate Court judge divided the property by awarding the more valuable parcel to the respondents, Howard and Joanne Lowre, with a monetary payment to Leombruno to make up the difference in value. Leombruno argues that the judge erred by relying on jointly submitted appraisals to determine the value of the property, and, instead, should have ordered a public or private sale. We affirm.
Background. Leombruno and Howard Lowre are long-time business partners who own an automobile repair shop called Arlington Auto Body, Inc. (AAB).[3] Together with Lowre's spouse, they own the real estate located at 14 Dudley Court and 4 Dudley Place in Arlington as tenants in common -- with Leombruno holding an undivided fifty percent interest in both parcels and the Lowres owning the other undivided fifty percent interest. Leombruno and Lowre's business, AAB, occupies 14 Dudley Court (hereinafter, the AAB lot). An Enterprise Rent-A-Car occupies the property at 4 Dudley Place (hereinafter, the Enterprise lot).
Leombruno was eighty-three years old at the time of trial, living in Florida, and diagnosed with dementia. He retired from daily operation of AAB in 2003 or 2004. Leombruno's son, Ronald Leombruno (Ronald), has pursued the instant litigation on behalf of his father under a durable power of attorney.[4] Ronald has worked at AAB his entire adult life.
Leombruno (through Ronald) filed his petition for partition in January, 2016, alleging that physical division of the property is impossible and seeking a sale of both lots. In his petition, Leombruno requested appointment of a commissioner with instructions to sell the property for no less than $750,000.[5]
Before trial, Leombruno moved in limine to preclude evidence concerning AAB, arguing that ownership and operation of the parties' business was irrelevant to the primary question before the court -- whether the property could be advantageously divided or must be partitioned by sale. The judge resolved that motion by allowing limited testimony about the business. At the hearing conducted on this motion, the parties informed the judge that there was no dispute that the two parcels were each owned by the parties as tenants in common, that the more valuable parcel was the one where the automobile repair shop was located, that the repair shop was a tenant of the two owners, and that the respondent wanted to continue working the automobile repair shop while the petitioner's son wanted to bid on it. However, at the motion hearing, the counsel for the petitioner made it clear that the major reason the petition for partition was filed was the lack of agreement as to the value of the two parcels, and the concern that without a sale of the properties the petitioner would not obtain fair value for his interest in the two parcels. In response, the court suggested that the parties obtain appraisals of the two lots. Counsel for Leombruno noted that he had been trying to hire an appraiser "for over a year and they [the respondents] have refused." Counsel for the Lowres responded by indicating that they too were interested in obtaining appraisals. After the parties conferred, Leombruno agreed that the parties would share the cost of one set of appraisals. The appraisals were submitted at trial, and showed the AAB lot was worth $890,000 while the Enterprise lot was worth $310,000.
Leombruno's counsel stipulated "to the appraised value for the purposes of this trial." Although he argued that the valuation was low, apart from Ronald's testimony suggesting that he and/or his father had previously made the Lowres a higher offer for the AAB lot, Leombruno submitted no other evidence of value. After trial, the judge entered a judgment, finding that the property could be advantageously divided by awarding the AAB lot to the Lowres and the Enterprise lot to Leombruno, with a monetary payment to Leombruno in the amount of $220,000.[6] According to the judge, "the forced sale of both properties, while it might result in a bidding war between the parties might also result in a third party purchasing the [AAB lot] raising the potential specter of the business being evicted from the property. The result of such a scenario would certainly be to the pecuniary disadvantage of each of the parties."[7]
Leombruno filed a motion to alter or amend the judgment, seeking in the alternative either sale of the AAB lot to the highest bidder or an award of the AAB lot to himself.[8] The judge denied that motion. On the Lowres' motion, the judge revised the judgment to change the sum that must be paid to Leombruno from $220,000 to $210,000 -- precisely half of the difference between the appraised value of the AAB lot (less an outstanding mortgage) and the appraised value of the Enterprise lot.[9] This appeal followed.
Discussion. Three questions are presented, which we address in turn. First, was the judge's determination to advantageously divide the property error where he awarded the AAB lot to the Lowres and the Enterprise lot to Leombruno? Second, did the judge err in using the parties' stipulated appraisals to determine the value of the property and the amount of owelty to be paid to Leombruno? Third, did the judge err by failing to follow the formal procedure of the partition statute?
1. Advantageous division. In a partition action, a court must determine "by a preponderance of the whole evidence that the land cannot be advantageously divided before ordering a sale." Delta Materials Corp. v. Bagdon, 33 Mass. App. Ct. 333, 338 (1992). "A sale is not simply an equally available alternative to a physical division; it may be ordered only after the court determines, upon careful findings, that advantageous division cannot be made." Ibid. See G. L. c. 241, § 31 (commissioners may be ordered to sell land "which cannot be divided advantageously"). The determination whether land should be divided or sold is "a question of fact to be decided by the trial judge upon all evidence." Clough v. Cromwell, 254 Mass. 132, 136 (1925).
Notably, in cases involving multiple noncontiguous lots, the court may divide the property by awarding intact lots to the various parties, rather than by physically dividing each lot by metes and bounds. See Hagar v. Wiswall, 10 Pick. 152, 152-153 (1830) ; Delta Materials, 33 Mass. App. Ct. at 337, quoting from Thompson, Real Property § 1823, at 291-292 (1979). See also G. L. c. 241, § 14.
"At bottom, the purpose of partition proceedings is to balance the rights and equities of the parties concerning the property at issue." Gonzalez v. Pierce-Williams, 68 Mass. App. Ct. 785, 787 (2007). The manner of division must be "just and equitable." Delta Materials, 33 Mass. App. Ct. at 337.
Here, the parties agreed that neither the AAB lot nor the Enterprise lot should be physically divided to create new, smaller lots. Thus, the only options available to the judge were to order one or both of the lots sold, and/or to order one or both of the lots set off with any necessary payment of owelty made to the party receiving less value. See G. L. c. 241, § 14. Leombruno argues that it was improper for the judge to consider any information about AAB in determining which of the parties should obtain the AAB lot. In the absence of such evidence, he claims, there was no principled basis upon which to determine who should get the favored parcel, and thus, the land could not be advantageously divided.
We disagree. "The difficulty and complexity of a just and equitable division do not alone justify resort to a sale." Delta Materials, 33 Mass. App. Ct. at 339. "A judge contemplating division may take into account 'the de facto condition of the premises,' together with any potential damage to the profitability of the land." Id. at 338, quoting from Clough, 250 Mass. at 332-333. The considerations involved "have reference mainly to the physical conditions of the land to be divided, but the advantage or disadvantage generally must be pecuniary." Delta Materials, 33 Mass. App. Ct. at 338. Here, the evidence showed the AAB lot was improved with a building most suitable for use as an autobody shop. Additionally, the judge expressly found there was a risk that if the AAB lot were sold to a third party, AAB (which has no lease) could be evicted, to the detriment of all. There was no clear error in the judge's fact finding. In these circumstances, where Leombruno had long since retired but Lowre expressed an intention to continue the business in its present location, and occupation of the AAB lot by the parties' business was in the continued pecuniary interests of all, the judge properly found the land could be advantageously divided in the manner specified.[10]
2. Value. Leombruno's sole claim of harm is found in the allegation that he would have obtained either the AAB parcel or a higher cash payment through a sale. The judge recognized this possibility, stating in his judgment that a forced sale "might result in a bidding war between [the parties]." The problem with Leombruno's position, however, is twofold.
First, as explained above, property should be partitioned by sale only where advantageous physical division is unavailable. See Delta Materials, 33 Mass. App. Ct. at 337 ("Division in kind is the primary and favored method of partition"). The judge properly ordered the parties to obtain evidence of the value of the property before determining a precise manner of division. See Morgan, 67 Mass. App. Ct. at 21 ; Delta Materials, 33 Mass. App. Ct. at 338-339. Once value was established, there was no impediment to dividing the land by set off as described in G. L. c. 241, § 14 -- which was the preferred option. Since establishing value is necessary to the advantageous division of land, see Morgan, 67 Mass. App. Ct. at 21, requiring a sale to establish value, as the petitioner contended, would read out of the statute its clear edict that division of land is preferable to sale -- and would, essentially, require at least an attempted sale in every case. G. L. c. 241, § 31.
Second, and perhaps more importantly, Leombruno agreed to the joint engagement of an appraiser and stipulated to the valuations that resulted. Even if we accept Leombruno's view that the judge ordered the parties to obtain appraisals, the judge did not require them to do so jointly. Instead, Leombruno was free at all times to offer his own evidence of the property's value -- but he did not do so.[11]
Once the judge had decided that the property should be partitioned by awarding one lot to each party rather than by sale, it was then well within bounds for the judge to use the stipulated values as the yardstick for awarding owelty. See Nichols v. Nichols, 181 Mass. 490, 492 (1902) ("By taking part without objection in the method adopted by the commissioners for the purpose of ascertaining the sum to be paid as owelty, the appellant lost any right to object which he might otherwise have had").
3. The partition procedure. Finally, Leombruno argues the judge committed reversible error by failing to follow the procedure set forth in the partition statute. General Laws c. 241, § 10, states in no uncertain terms that once a judge has found that a petitioner "is entitled to have partition for the share claimed or for any less share," the court "shall make the interlocutory decree that partition be made, and therein determine the persons to whom and the proportions in which the shares shall be set off" (emphasis supplied). G. L. c. 241, § 10. The statute's use of the word "interlocutory" is misleading. The decree is final, and appealable as of right. Delta Materials, 33 Mass. App. Ct. at 333 n.2. The statute further provides that "[i]f the court determines the petitioner entitled to partition, it shall thereupon appoint one or more disinterested commissioners and issue a warrant to them to make partition" (emphasis supplied). G. L. c. 241, § 12.[12] The responsibility to decide whether the property should be divided or sold, however, belongs to the judge. See Platts v. Wronski, 15 Mass. App. Ct. 30, 34 (1982).
If a commissioner is appointed, under c. 241, § 16, the court thereafter holds a hearing to "accept and confirm" the commissioner's report, but "the sole questions which arise at the final decree stage are whether the actions of the commissioners have been tainted by irregularity and whether they have divided the locus according to the requirements of the 'interlocutory' decree." Asker v. Asker, 8 Mass. App. Ct. 634, 637 (1979). If the property is partitioned by sale, the operative instrument transferring title is the commissioner's deed. Cowden v. Cutting, 339 Mass. 164, 169-170 (1959). Where partition is by division, the court's decree confirming the commissioner's act "operates to transfer the property." Cowden, 339 Mass. at 170. See G. L. c. 241, § 16.
Although the judge did not issue an interlocutory decree and did not appoint a commissioner, the deviation from the terms of the statute did not result in any prejudice to the petitioner. Leombruno has not alleged any harm flowing from the judge's failure to observe these formalities. His true quarrel is with the substantive result as to issues that were well within the judge's authority to determine.[13] See Platts, 15 Mass. App. Ct. at 34. Moreover, Leombruno does not explain how the court or the parties would have benefited from the assistance of a commissioner, or precisely what function a warrant appointing a commissioner would have instructed him or her to perform.[14] His argument is circular -- a commissioner was necessary because a sale should have been ordered. Having already rejected the argument that a sale was required, however, the argument is unavailing.[15] ,[16]
Revised judgment affirmed.

The trial judge wrote that Leombruno and Lowre have a "long term business association which eventually evolved into a partnership ...." It appears, however, that AAB is organized as a corporation. In any event, unlike in our recent decision in Sullivan v. Lawlis, 93 Mass. App. Ct. 409 (2018), there is no claim here that the subject real estate is held by a partnership. See Webber v. Rosenberg, 318 Mass. 768, 769 (1945) (partnership property not subject to partition).

The power of attorney under which Ronald acts is reproduced in the record and includes a provision empowering Ronald to pursue claims and litigation. Neither the trial judge nor the Lowres have questioned Ronald's standing to appear and litigate on behalf of his father.

In March, 2016, Leombruno moved for appointment of a commissioner. We agree with the Lowres that this motion was properly denied as premature because the court had not yet determined Leombruno was entitled to partition. See Hershman-Tcherepnin v. Tcherepnin, 452 Mass. 77, 79 (2008). See also G. L. c. 241, § 10.

"The sum of money ordered to be paid in order to equalize a disproportionate division of property is sometimes termed 'owelty.' " Delta Materials Corp. v. Bagdon, 33 Mass. App. Ct. 333, 338 n.7 (1992).

AAB does not have a lease.

Leombruno suggested in his posttrial motion that the judge could order a private sale to the highest bidder as between the parties, or could order a sale on the open market with both parties having a right of first refusal. See G. L. c. 241, § 31.

The calculation is as follows: The $890,000 value of the AAB lot minus the mortgage of $160,000, minus the $310,000 value of the Enterprise lot, equals $420,000. That sum divided by two is $210,000.

At bottom, Leombruno's argument reduces to the notion that the property had to be sold because the parties and/or Ronald were willing to pay more for the AAB land than the stipulated appraisal showed it to be worth. Our decision in Morgan v. Jozus, 67 Mass. App. Ct. 17 (2006), indicates that, generally, the value of land should be maximized for the benefit of the owners in a partition action. Id. at 20-21, 23. Morgan also stands for the proposition that in order to set off land to one party, a determination must be made as to its value, which may necessitate an evidentiary hearing. See id. at 21. See also Delta Materials, 33 Mass. App. Ct. at 338-339. Here, however, the judge did precisely what Morgan requires. As discussed infra, he determined the value of the property based on evidence submitted in an evidentiary hearing. That the evidence was in the form of a joint stipulation did not require the judge to disregard it. Moreover, Morgan does not require the court to "test out the market" by ordering a sale in every partition case. See id. at 23.

Leombruno's counsel's stipulation at trial was accompanied by the vague caveat that the stipulation was "for the purposes of this trial." Whatever its intended meaning, this language was insufficient to alert the judge that Leombruno was challenging the appraised values or somehow limiting the purpose of the stipulation.

We note, however, this court has said that once a judge determines land may be divided in a scheme involving physical division of one or more of the parcels, "a commissioner may be appointed pursuant to G. L. c. 241, § 12, to assist the court in making partition" (emphasis supplied). Delta Materials, 33 Mass. App. Ct. at 339-340.

We are aware of the proviso that land may be set off to one or more parties upon payment of such money as "the commissioners award to make the partition just and equal." G. L. c. 241, § 14. We do not believe, however, that this section of the statute strips the court of authority to make its own determination as to the amount of owelty where the parties have stipulated as to the value of the subject land.

This case is distinguishable from Chiminiello v. Chiminiello, 8 Mass. App. Ct. 806 (1979), where a "judgment" concluding that the petitioner was entitled to partition but failing to appoint a commissioner was held to be interlocutory and the resulting appeal was dismissed. Id. at 808. Here, the judgment decreed (implicitly) that Leombruno was entitled to partition (which was not contested) and also resolved substantively the manner of partition at the same time. It was a final judgment and appealable as of right.

We note that, in acting as he did, the judge expressed concern that appointing a commissioner would involve unnecessary cost to the parties. See G. L. c. 241, § 22. For example, in this case, a commissioner might have engaged the services of his own appraisers at a considerable expense in addition to his own expenses.

The defendants request attorneys' fees and costs in connection with this appeal. As we do not find the plaintiff's appeal without merit, we do not entertain the request.